COMMONWEALTH of Pennsylvania, Appellee

v.

Frank Joseph ROSSETTI, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 26, 2004.

Filed Dec. 8, 2004.

---

David J. Foster, Lemoyne, for appellant.

Scott P. Rigdon, Assistant District Attorney, York, for Commonwealth, appellee.

Before: STEVENS, McCAFFERY, and TAMILIA, JJ.

OPINION BY STEVENS, J:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of York County after a jury convicted Appellant of involuntary manslaughter.[1] On appeal, Appellant claims that: (1) his conviction for involuntary manslaughter is barred by the statute of limitations, even though he withdrew such claim and subsequently resurrected it in a post-sentence motion; (2) he received ineffective of assistance of trial counsel; (3) the verdict was against the weight of the evidence; (4) his sentence is manifestly excessive and violates the Sixth Amendment and is in conflict with *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and (5) the trial court failed to supply sufficient reasons for sentencing Appellant to the statutory maximum. We affirm the judgment of sentence and dismiss Appellant's ineffective assistance of counsel claim without prejudice pursuant to *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002).

¶ 2 The relevant facts and procedural history are as follows: On May 1, 1986, Appellant, his wife (Kim Rossetti), and Vincent Fisichella became involved in a dispute over missing drugs. N.T. 11/14/03 at 583–719. During the dispute, Mr. Fisichella assaulted Ms. Rossetti. N.T. 11/14/03 at 583–719. Ms. Rossetti then threatened Mr. Fisichella with a gun. N.T. 11/12/03 at 294–375; 11/14/03 at 583–719.

¶ 3 Appellant left his residence, walked down the street to his brother-in-law's (Mark Steininger), home and enlisted his aid in getting revenge on Mr. Fisichella by assaulting him. N.T. 11/12/03 at 294–375; 11/14/03 at 583–719. At the time, a party, which involved the heavy use of both drugs and alcohol, was occurring in Mr. Steininger's residence. N.T. 11/12/03 at 294–375; 11/14/03 at 583–719.

¶ 4 Appellant and Ms. Rossetti walked Mr. Fisichella over to Mr. Steininger's residence; upon entering the residence, Mr. Fisichella was attacked by Appellant, Ms. Rossetti, and Mr. Steininger. N.T.

---

1. 18 Pa.C.S. § 2504.

11/12/03 at 294–375; 11/14/03 at 583–719. For approximately twenty minutes, Mr. Fisichella was punched and kicked, his clothing was ripped off him, his body was searched for drugs, and he was sodomized with a broom, by Appellant, Ms. Rossetti, and Mr. Steininger, while party guests watched. N.T. 11/12/03 at 294–375; N.T. 11/14/03 at 583–719.

¶ 5 For at least two hours, Mr. Fisichella lay unconscious on the floor of Mr. Steininger's kitchen, while the partying continued. N.T. 11/12/03 at 294–375; N.T. 11/14/03 at 583–719. Ultimately, Appellant and Mr. Steininger wrapped Mr. Fisichella in a rug, put him in the back of a car, drove to a secluded spot, and threw his body over an embankment. N.T. 11/12/03 at 294–375. Mr. Fisichella was still alive at that point. N.T. 11/12/03 at 294–375. On May 10, 1986, Mr. Fisichella's partially decomposed body was discovered in rural area in Lower Allen Township, Cumberland County, Pennsylvania. N.T. 11/11/03 at 86–87.

¶ 6 Following the discovery of the body, Appellant and Ms. Rossetti fled the jurisdiction for several years. Trial Court Opinion 5/11/04 at 7. The homicide remained unsolved for many years but, following the discovery of new information, on May 9, 2002, Appellant, Mr. Steininger, and Ms. Rossetti were charged with murder in the first degree,[2] murder in the third degree,[3] and criminal conspiracy.[4] Trial Court Opinion 5/11/04 at 2. Mr. Steininger and Ms. Rossetti pleaded guilty to murder in the third degree and testified against Appellant at trial. Trial Court Opinion 5/11/04 at 2.

¶ 7 A jury trial took place from November 10th through 17th, 2003. Trial Court Opinion 5/11/04 at 2. A charge conference took place on November 14, 2003. N.T.

11/14/03 at 748–65. During the conference, Appellant's counsel requested that the jury be charged on the lesser included offense of involuntary manslaughter. N.T. 11/14/03 at 764–65. The Commonwealth had no objection and the trial court agreed to charge the jury on involuntary manslaughter. N.T. 11/14/03 at 764–65. On November 17, 2003, the jury found Appellant guilty of involuntary manslaughter and not guilty of the remaining charges. N.T. 11/17/03 at 874–75. Immediately following the verdict, Appellant moved to dismiss the conviction, arguing that the involuntary manslaughter charge was barred by the statute of limitations. N.T. 11/17/03 at 877–78.

¶ 8 On December 23, 2003, immediately prior to the imposition of sentence, Appellant formally withdrew his claim that his involuntary manslaughter conviction was barred by the statute of limitations. N.T. 12/23/03 at 4. The sentencing court sentenced Appellant to the statutory maximum of two-and-one-half to five years. N.T. 12/23/03 at 13.

¶ 9 On January 2, 2004, Appellant filed a post-sentence motion in which he again raised the statute of limitations claim, a weight of the evidence claim, and various claims relating to his sentence. C.R. 37. By Order of February 25, 2004, the trial court denied the motion. C.R. 38. Appellant filed a timely notice of appeal, and he was ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Accordingly, Appellant filed his 1925(b) statement and a supplemental 1925(b) statement, and the trial court subsequently issued its opinions.

¶ 10 Appellant first claims that his conviction for involuntary manslaughter is

2. 18 Pa.C.S.A. § 2502.

3. 18 Pa.C.S.A. § 2702.

4. 18 P.S. § 903.

barred by the statute of limitations because Appellant failed to make a knowing, voluntary and intelligent waiver of the statute of limitations. For the reasons discussed below, we find that Appellant failed to preserve this claim for our review.

¶ 11 As discussed above, Appellant requested that the jury be charged on the lesser included offense of involuntary manslaughter. Immediately following his conviction on this charge, Appellant moved to dismiss his conviction on statute of limitations grounds and requested time to fully brief the issue. At sentencing, Appellant withdrew this claim on the record only to resurrect it in his January 2, 2004 post-sentence motion. In *Commonwealth v. Darush*, 501 Pa. 15, 20 n. 4, 459 A.2d 727, 730 n. 4 (1983), the Pennsylvania Supreme Court held that a statute of limitations claim is waived if not raised in a pretrial omnibus motion seeking dismissal of the charges. *Id.* In two decisions following *Darush*, this Court found statute of limitations claims to be waived when not raised at the first available opportunity and when raised after the imposition of sentence. *Commonwealth v. Groff*, 378 Pa.Super. 353, 548 A.2d 1237, 1244–45 (1988); *Commonwealth v. Stover*, 372 Pa.Super. 35, 538 A.2d 1336, 1339 (1988). In *Stover*, we stated that a defendant had from the expiration date of the statute of limitations until the date of sentencing to raise the issue of statute of limitations and that the failure to raise it in a timely fashion constituted a waiver of the claim. *Stover*, 538

A.2d at 1339. Here, while Appellant initially raised the claim before sentencing, he also withdrew the claim on the record immediately before sentencing, such that his belated filing of a post-sentence motion cannot resurrect the claim. Accordingly, we find Appellant's statute of limitations claims to be waived.[5] *See also, Commonwealth v. Morrow*, 452 Pa.Super. 403, 682 A.2d 347, 349 (1996) (proper procedure for raising a statute of limitations claim is in an omnibus pretrial motion); *Commonwealth v. Vidmosko*, 393 Pa.Super. 236, 574 A.2d 96, 97–98 (1990) (statute of limitations claim waived when not raised prior to trial); *Commonwealth v. Riley*, 330 Pa.Super. 201, 479 A.2d 509, 515 (1984) (statute of limitations claim is waived when not raised pre-trial).

¶ 12 Appellant claims that he received ineffective assistance of trial counsel. This claim is dismissed without prejudice for Appellant to seek collateral review under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, in accordance with the Pennsylvania Supreme Court's opinion in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002).

¶ 13 In *Grant*, the Supreme Court stated that, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 67–68, 813 A.2d at 739. The Supreme Court noted that an exception to the general rule may be created when there has been a complete or con-

---

5. Even if the claim was not waived, we would find it meritless. Appellant does not rely on any Pennsylvania law to support his contention that an on-the-record colloquy is required in order to waive the statute of limitations. We are not persuaded by Appellant's reliance on *State v. Pearson*, 858 S.W.2d 879 (1993), as the Supreme Court of Tennessee specifically acknowledged in *Pearson* that Pennsylvania had taken a different approach to statute of limitations issues. *Pearson*, 858

S.W.2d at 886 (citing to *Darush*, 501 Pa. at 20 n. 4, 459 A.2d at 730 n. 4). Further, Appellant deserves no remedy where he attempted to manipulate the criminal justice process by first requesting a charge on a lesser included offense, only to seek dismissal of the conviction when he is convicted on that charge, followed by his withdrawal of the statute of limitations claim, only to resurrect it when Appellant was dissatisfied with the results of sentencing.

structive denial of counsel or that counsel has breached his or her duty of loyalty. *Grant*, at 67, 813 A.2d at 738 n. 14. In addition, the appellate courts have carved out limited exceptions to the general rule set forth in *Grant*. For example, we will address ineffective assistance of trial counsel claims on direct appeal where the appellant would not be entitled to collateral relief due to the short duration of his sentence. *Commonwealth v. Salisbury*, 823 A.2d 914 (Pa.Super.2003), and where the ineffectiveness claim was raised in a timely post-sentence motion, developed at a hearing, and ruled upon by the trial court, *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003); *Commonwealth v. Hudson*, 820 A.2d 720 (Pa.Super.2003). Moreover, this Court has addressed an ineffective assistance of trial counsel claim on direct appeal where the evidentiary record was complete and there was a trial court opinion addressing the claim. *Commonwealth v. Causey*, 833 A.2d 165 (Pa.Super.2003) (holding that *Grant* did not require dismissal of a claim that counsel was ineffective in failing to challenge sufficiency of the evidence where the record was complete and trial court drafted an opinion addressing this claim). We have also found an exception to *Grant's* general rule where the ineffectiveness claim was discussed in a Pa.R.A.P.1925(a) opinion, which addressed the merits of the claim and specifically indicated that the existing record was sufficiently developed for resolution of the claim. *Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super.2003).

¶ 14 Here, Appellant acknowledges that *Grant* applies to his case but argues that his claim should be addressed. We disagree and conclude that none of the exceptions enumerated above apply. Appellant's claim was first raised in a supplemental 1925(b) statement and the trial court declined to address the merits of the claim in its supplemental 1925(a)

opinion. Accordingly, Appellant's ineffective assistance of counsel claim must be dismissed pursuant to *Grant*.

¶ 15 Appellant claims that the verdict was against the weight of the evidence because the evidence showed that Mr. Fisichella died as a result of a voluntary overdose and Appellant's sole involvement was that he failed to render or obtain medical aid for Mr. Fisichella.

Before a trial court may award a new trial on the ground that the [verdict is against the weight of the evidence,] it must appear that the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative. When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Hunter*, 381 Pa.Super. 606, 554 A.2d 550, 555 (1989) (citation omitted). An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751–52 (2000) (citation omitted). Our Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 753 (citation omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light

most favorable to the verdict winner." *Id.* at 751 (citations omitted).

¶ 16 We are unconvinced by Appellant's arguments which are based on a misstatement of the testimony of the forensic toxicologist and on the complete disregard of the testimony by the coroner, the forensic pathologist, and the several witnesses who witnessed Appellant beat Mr. Fisichella on the night of May 1, 1986.

¶ 17 At trial, Dr. Siek, a forensic toxicologist, testified that Mr. Fisichella had cocaine, morphine, and marijuana in his blood and urine. N.T. 11/13/03 at 388–90. Dr. Siek stated that the cocaine concentration was in the acutely toxic range and *could* cause death. N.T. 11/13/03 at 389–90 (emphasis added). Dr. Siek qualified his testimony by comparing the situation to a case where an individual ingests a large amount of cocaine and subsequently gets into a traffic accident, the level of the cocaine in his body might be in the acutely toxic range but the actual cause of death is not an overdose of cocaine but a traffic accident. N.T. 11/13/03 at 390–91. Dr. Siek further qualified his testimony by stating that he was unaware of the events of the night in question, that addicts had a greater degree of tolerance to high dosages of drugs, and that he was unaware of Mr. Fisichella's level of tolerance. N.T. 11/13/03 at 393–94. Dr. Siek ultimately testified that, looking at the situation in a vacuum, the drugs could have caused Mr. Fisichella's death. N.T. 11/13/03 at 417–18.

¶ 18 However, at trial, both the coroner and the forensic pathologist testified that Mr. Fisichella's death was caused by a combination of factors. N.T. 11/12/03 at 146–275. Both testified that the combination of drugs and the beating rendered Mr. Fisichella unconscious and that becoming unconscious allowed foreign materials to go into Mr. Fisichella's windpipe and lungs leading to pneumonia and his subsequent death. N.T. 11/12/03 at 146–275.

¶ 19 Further, at trial, six different witnesses testified that they observed Mr. Fisichella being beaten; two of the witnesses testified that Appellant initiated the beating by enlisting Mr. Steininger's aid; three witnesses testified that they observed Appellant participating in the beating; and four witnesses testified with respect to Appellant's role in dumping Mr. Fisichella's unconscious body in a ditch. N.T. 11/12/03 at 294–376; N.T. 11/13/03 at 421–580; N.T. 11/14/03 at 583–719.

¶ 20 The finder of fact was free to believe the combined testimony of the coroner, forensic pathologist, and forensic toxicologist, and to conclude that Mr. Fisichella died as a result of the combination of the beating and ingestion of drugs, which caused him to aspirate foreign material into his windpipe. *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial); *Hunter, supra.* They were further free to believe the testimony of the Commonwealth witnesses that Appellant initiated the beating, participated in the beating, and dumped Mr. Fisichella's unconscious body in a ditch. We find that the verdict was not so contrary to the evidence as to shock our sense of justice. *Hunter, supra.*

¶ 21 Appellant raises several claims attacking both the legality and discretionary aspects of his sentence. Initially, we note that the offense in the instant case took place in 1986 and the sentencing guidelines do not apply to offenses which occurred prior to April 25, 1988. 204 Pa.Code § 303.1(c)(2). In 1986, the trial court was required to impose a sentence that was consistent with the need to protect the public, the gravity of the offense, and the rehabilitative needs of a particular defen-

dant. *Commonwealth v. Devers*, 519 Pa. 88, 92, 546 A.2d 12, 13 (1988).

¶ 22 Raised for the first time in his brief is Appellant's claim that his sentence is illegal under the United States Supreme Court's decision in *Blakely*.[6] While, ordinarily, we would find a claim to be waived because it was not raised in Appellant's 1925(b) statement, a challenge to the legality of sentence is never waived and may be the subject of inquiry by the appellate court *sua sponte*. *Commonwealth v. Pastorkovic*, 390 Pa.Super. 1, 567 A.2d 1089, 1091 (1989) (citations omitted). Accordingly, we find that Appellant's challenge to the legality of his sentence is not waived and will address it on the merits. However, for the reasons discussed below, we find Appellant's challenge to the legality of his sentence meritless.

¶ 23 Appellant argues that his sentence to the statutory maximum was based upon judicial determination of facts not found by the jury, and thus a violation of his Sixth Amendment right to trial by jury. In *Commonwealth v. Bromley*, 862 A.2d 598 (Pa.Super.2004), however, this Court held that *Blakely* "does not implicate the Pennsylvania [indeterminate] scheme, where there is no promise of a specific sentence." *Bromley*, at 603. While the *Bromley* case concerned the imposition of a sentence in the aggravated range of the guidelines rather than the statutory maximum, its analysis of *Blakely* is pertinent. *See Bromley, supra*. As we discussed in *Bromley*, *Blakely* concerns itself with the idea of being *entitled* to a particular sentence unless certain specific findings of fact are made. *See Blakely*, — U.S. at ——, 124 S.Ct. at 2540.

¶ 24 Here, even more so than in *Bromley*, there was no entitlement to any partic-

ular sentence; the sentencing guidelines were not in place and an individual who committed involuntary manslaughter risked being sentenced to the statutory maximum sentence. The instant matter simply does not involve a situation where the trial court sentenced a defendant to a "sentence greater than what state law authorized on the basis of the verdict alone." *Id.* at 2538. The mere fact that the trial court referenced certain facts about the crime is not in-and-of-itself sufficient to make the sentence run afoul of *Blakely*, when the indeterminate sentencing scheme allows the trial court to sentence the defendant to the statutory maximum even without reference to those facts. *Id.* (citing *Williams v. New York*, 337 U.S. 241, 242–43, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). Accordingly, we find that the sentence imposed did not violate Appellant's Sixth Amendment rights.

¶ 25 Appellant's challenge to the discretionary aspects of his sentence states that: (1) the sentence was manifestly excessive; (2) the trial court failed to consider mitigating circumstances and only considered the seriousness of the crime; and (3) the sentencing court did not provide a sufficient statement of reasons for exceeding the standard sentencing guidelines range.

> [S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. Appellant challenges the discretionary aspects of sentencing for which there is no automatic right to appeal. This appeal is, therefore, more appropriately considered a petition for allowance of appeal. Two requirements must be met before a challenge to the judgment of sentence

---

6. "When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro*

*v. Summerlin*, — U.S. ——, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004) (internal citation omitted).

will be heard on the merits. First, the appellant must set forth in [her] brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Second, [she] must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code.

The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis.

*Commonwealth v. Ritchey,* 779 A.2d 1183, 1185 (Pa.Super.2001) (citations omitted).

¶ 26 Appellant has filed a sufficient concise statement of the reasons relied upon for allowance of appeal pursuant to Pa. R.A.P. 2119(f). As such, where appropriate, we shall proceed to determine whether Appellant's issues raise a substantial question and, if so, proceed to a discussion of the merits. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987).

¶ 27 Appellant first claims that the sentence was manifestly excessive. In *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002) (plurality), the Pennsylvania Supreme Court held that a claim that a sentence, which is within the statutory limits, is excessive can raise a substantial question. *Id.* at 435, 812 A.2d at 627–28. In order to raise a substantial claim, Appellant's 21199(f) statement must sufficiently articulate "the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Id.* at 435, 812 A.2d at 627. Here, while Appellant generally states that his sentence violates the fundamental norms underlying the sentencing

process and cites to three sections of the Sentencing Code, Appellant has failed to explain how his sentence violated either the cited provisions of the Code [7] or the underlying norms. Accordingly, we find that Appellant has failed to raise a substantial question that his sentence was manifestly excessive.

¶ 28 Appellant alleges that the trial court only considered the seriousness of the crime and failed to give appropriate weight to the mitigating circumstances when sentencing him to the statutory maximum. This claim raises a substantial question and we will therefore address the merits of this claim. *Commonwealth v. Felmlee,* 828 A.2d 1105, 1107 (Pa.Super.2003).

¶ 29 We have reviewed Appellant's claim along with the notes of testimony from the December 22, 2003 hearing and find that the sentencing court appropriately balanced the seriousness of the crime along with the mitigating circumstances. The sentencing court specifically noted the numerous letters sent by Appellant's co-workers and supervisors from his place of employment which attested to Appellant's reliability and dependability; the court also noted other letters from Appellant's priest and an owner of a hardware store attesting to Appellant's good character; and letters from Appellant's family also attesting to his good character. N.T. 12/22/03 at 5. The sentencing court also discussed Appellant's rehabilitation and the blameless lifestyle he had lived since 1992. N.T. 12/22/03 at 6. The Court balanced this by noting that: (1) Appellant had a history of prior criminal involvement; (2) that Appellant lied to the police immediately following the discovery and identification of Mr. Fisichella; (3) that

---

**7.** We note that two of cited sections, 42 Pa. C.S.A. §§ 9781(c) and (d) are unlikely to have been violated by the trial court as they are solely concerned with the appellate review of sentencing.

Appellant fled the jurisdiction and remained at-large for many years; (4) the anguish suffered by Mr. Fisichella's family because of the unknown circumstances of his death; (5) that, despite the fact that Mr. Fisichella was a close personal friend of Appellant's, Appellant instigated the beating and sodomization, encouraged others to participate in the beating and sodomization, declined a request by Ms. Rossetti to seek medical attention for the victim, and then left the unconscious victim to die in a deserted area; and (6) that the incident was motivated by a dispute over drug trafficking. N.T. 12/22/03 at 11–13. Thus, it is obvious that the sentencing court was aware of and carefully reviewed all the facts and made an intelligent and informed decision as to Appellant's sentence.

■ ¶ 30 Appellant last claims that the sentencing court sentenced him to the statutory maximum without placing adequate reasons on the record. This claim raises a substantial question and we will therefore address the merits of this claim. *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa.Super.1999).

¶ 31 Our review of the record, as discussed above, belies the claim that the sentencing court failed to place sufficient reasons for the sentence on the record. Here, the sentencing court meticulously stated its reasons for sentencing Appellant to the statutory maximum, and we find that the record substantiates the sentencing court's sentencing determinations.

¶ 32 For all of the foregoing reasons, we affirm the trial court's judgment of sentence and dismiss Appellant's ineffective assistance of counsel claim pursuant to *Grant*.