J-S11022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ADRIAN ORTIZ-DIAZ | |
| Appellant | No. 1115 MDA 2014 |

Appeal from the Judgment of Sentence May 23, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004310-2013

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 13, 2015**

Adrian Ortiz-Diaz appeals from the judgment of sentence imposed on May 23, 2014, in the Court of Common Pleas of Dauphin County.  A jury convicted Ortiz-Diaz of robbery, aggravated assault, and recklessly endangering another person.[1]  The trial court sentenced Ortiz-Diaz to an aggregate  term of imprisonment of six to 12 years.  The sole issue raised by Ortiz-Diaz is a challenge to the weight of the evidence.[2]  We affirm based upon on the sound reasoning of the trial court.

---

[1] **See** 18 Pa.C.S. §§ 3701(a)(1)(ii), 2702(a)(1), and 2705.

[2] We note Ortiz-Diaz properly preserved his weight issue in a timely post-sentence motion, and a timely Pennsylvania Rule of Appellate Procedure 1925(b) statement, in accordance with the court's extension of time.

The trial court's opinion fully sets forth the relevant facts and procedural history of this case, and therefore, we do not restate them here. *See* Trial Court Opinion, 12/12/2014, at 1–7.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Richard A. Lewis, we conclude Ortiz-Diaz's issue merits no relief. *See* Trial Court Opinion, *supra* at 8–10 (finding: (1) the victim's story was Ortiz-Diaz called the victim so they could smoke marijuana at his house, appeared at the victim's door, pointed a gun at the victim, and demanded the victim "give him everything"; the victim, thinking it was a joke, refused and was hit with the butt of the gun; and a struggle ensued, resulting in the victim being shot in the leg and the fight spilling into the yard; (2) several witnesses, including two eyewitnesses to all or part of the incident, corroborated the victim's story; (3) the testimony of law enforcement and Dr. Robert Rankin, the emergency room physician who treated the victim, established the injuries of the victim and Ortiz-Diaz were consistent with the victim's story, (4) the physical evidence of photographs, ballistic testing and the cell phone call support the victim's version, as well, and (5) the jury resolved any concerns regarding credibility or inconsistency in the victim's testimony and chose to believe the victim's version of the events, and the court cannot conclude

that the verdict shock's one's sense of justice.).  Accordingly, we adopt the trial court's opinion as dispositive of the issue raised in this appeal.

Judgment of sentence affirmed.[3]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2015

_____

[3] In the event of further proceedings, the parties are directed to attach a copy of the Trial Court Opinion, 12/12/2014, to this decision.

COMMONWEALTH OF PENNSYLVANIA    : IN THE COURT OF COMMON PLEAS
                         : DAUPHIN COUNTY, PENNSYLVANIA
          v.                 :
                         : DOCKET NO.: 4310 CR 2013
ADRIAN ORTIZ-DIAZ           : (1115 MDA 2014)

## MEMORANDUM OPINION

Defendant, Adrian Ortiz-Diaz ("Appellant" or "Ortiz-Diaz") is appealing this Court's judgment of sentence entered on May 23, 2014. This opinion is written pursuant to Pa.R.A.P. 1925(a).

## PROCEDURAL HISTORY

On July 26, 2013, Appellant, Adrian Ortiz-Diaz, was arrested and subsequently charged with one count each of Robbery,[1] Aggravated Assault,[2] Carrying a Firearm Without a License,[3] Recklessly Endangering Another Person.[4] After a jury trial was held on March 26 – 28, 2014, Appellant was convicted on all charges except Carrying a Firearm Without a License. This Court sentenced Appellant on May 23, 2014, to an aggregate term of six (6) to twelve (12) years of incarceration along with the payment fines in the amount of $1100 and the costs of prosecution. A timely post-sentence Motion was filed on June 2, 2014, which this Court denied on June 6, 2014.

Appellant timely filed a Notice of Appeal to the Pennsylvania Superior Court on July 10, 2014. In compliance with this Court's Order, Appellant timely filed a Concise

---

[1] 18 Pa.C.S. § 3701(a)(1).
[2] 18 Pa.C.S. § 2702(a)(1).
[3] 18 Pa.C.S. § 6106(a)(1).
[4] 18 Pa.C.S. § 2705.

4-10

Statement of Errors Complained of on Appeal in accordance with Pa.R.A.P. 1925(b), raising the following issue:

> 1.    The trial court erred in denying Appellant's Post-Sentence Motion where the verdict was against the weight of the evidence so as to shock one's sense of justice as: the Commonwealth presented the inconsistent, contradictory, and conflicting testimony of the victim and his girlfriend; the weapon involved was only connected to the victim, not Appellant, and; Appellant was arrested walking back toward the crime scene shortly after the shooting.

For the reasons set forth below, this Court finds that the judgment of sentence should stand.

## FACTUAL BACKGROUND

During a jury trial held on March 26 – 28, 2014, the following facts were established: In the late afternoon of July 26, 2013, Luis Torres ("Torres") was staying at his girlfriend Senaida Rodriguez's ("Ms. Rodriguez") house located in the Hall Manor public housing complex, Row 1-F in Harrisburg, Pennsylvania. He was awoken by a phone call from Appellant, Adrian Ortiz-Diaz ("Appellant") who said he was coming over to smoke marijuana. Torres testified that he knew Appellant through his girlfriend's brother's friend and had a good relationship with him. When Appellant arrived at the back door of the residence, which led to the kitchen, Torres opened the door to Appellant pointing a gun in his face demanding "give me everything." Torres stated that he laughed and refused because he thought Appellant was joking. Appellant proceeded to hit Torres in the head with the gun causing Torres to realize that it was not a joke.

2

Torres' girlfriend and one of their children were present in the kitchen when these events took place.

Torres reacted by attempting to take the gun away from Appellant which caused a physical altercation he described as a "tussle." During the fight, Torres pulled the gun downward, then a shot went off that went through his left leg, out the other side and into and out of the right leg. Torres took hold of the gun, threw it down and, as the altercation progressed outside the residence, beat Appellant with his fists. Appellant broke from the fight and ran away at which time Torres picked up the gun and shot in the air out of anger and frustration.

The police were called by Ms. Rodriguez and arrived right after Appellant ran from the scene. Ms. Rodriguez testified that she was cooking in the kitchen when a knock at the back door brought Torres from the living room to answer it. Hearing a shot, she turned toward the door and the child ran to the second floor. Ms. Rodriguez observed the physical struggle between Torres and Appellant in the area of the kitchen doorway. She stated that Appellant had a gun which Torres was trying to take away. Once Torres got the gun, the men continued fighting eventually landing outside. When Appellant ran away, she saw Torres pick up the gun and fire shots in the air out of anger.

Ms. Rodriguez identified Appellant as the person involved in the fight with Torres. She testified that she saw a heated fight and lots of blood but, Torres had no gun when he answered the door. When the police arrived, Torres had the gun in his hand and was bleeding from the gunshot wounds to his thigh and calf and a gash in his head.

3

Ms. Rodriguez's next door neighbor, Erica Perez ("Ms. Perez"), was in her apartment while her children were playing in the yard. When Ms. Perez heard a "boom" close by, she investigated. Outside, she saw two men in the yard behind 1-F fighting on the lawn.

Office Darrin Bates ("Officer Bates") of the HBP Street Crimes Unit ("SCU") was dispatched to 1 Row Hall Manor to respond to a shots fired call. Officer Bates encountered Torres bleeding and in an agitated state which he described as an "adrenaline rush," while holding a gun in his hand pointing downward. Torres had been pacing the sidewalk as he pulled his unmarked police vehicle towards him. Bates testified that Torres dropped the gun immediately upon his command.

Torres told Bates and other officers on the scene bits of information about the incident. Torres told him he had been shot and Officer Bates described Torres as looking like he had been in a fight. Officer Bates stayed on scene and secured the firearm until an ambulance arrived. It was later determined that the recovered firearm was registered to one Elisandro Ramirez Otero ("Mr. Otero"). At trial, Mr. Otero identified the firearm as his and testified that it had been stolen 2-3 years ago. Mr. Otero stated that the person who stole it told him he had given it someone else but Otero did not know who. Mr. Otero did not report the firearm stolen as he had been threatened by the person who took it, which he denied was Torres or Appellant.

After Torres was placed in an ambulance for transport to the hospital, Ms. Rodriguez spoke with police about the incident and gave police permission to search the residence. While speaking to Officer Timothy Brooks ("Officer Brooks") of the

4

Harrisburg Bureau of Police ("HBP") Public Housing Unit, a call came in that a suspect meeting Appellant's description was located by other officers in the area of 12, 13 Hall Manor. Officer Brooks took Ms. Rodriguez to the location where Appellant had been detained and she positively identified him as the person who shot Torres. She later gave a recorded statement at the police station which recounted the events.

When Officer Brooks arrived on scene Officer Bates pointed out a Springfield XD semiautomatic firearm. Torres told Officer Brooks that a Hispanic male had come to his back door, pointed a gun in his face saying something like "give me what you got." Torres went on to describe a fight that had ensued in the kitchen and a struggle over a gun during which he was shot. He also told Brooks that the fight outside continued in the yard after he was able to disarm the gunman. Torres stated to him that he continued to beat the man causing serious injuries to his face. Officer Brooks testified that Torres' story was consistent with the injuries he observed.

Officer Scott Johnsen ("Officer Johnsen") was also dispatched to Hall Manor along with an Officer Hall in order to assist in securing the crime scene. Shortly after his arrival, dispatch informed him that sheriffs had located a male matching Torres' description of the perpetrator, with a bloody face, approximately one block away from the scene in Row 13 Hall Manor. When Officers Johnsen and Hall spotted Appellant, he was ordered to the ground and detained. Officer Johnsen described him as looking dazed and assaulted. Officer Brooks brought Ms. Rodriguez to Row 13, where she positively identified Appellant as the person involved in the incident at her residence.

5

Corporal Tyron Meik ("Cpl. Meik") was dispatched to Hall Manor to secure the scene and the evidence. Cpl. Meik was able to observe Torres' injuries as he spoke to Officer Bates. Cpl. Meik also observed found keys and a cellphone in fresh blood on the grass. While investigating the area around the kitchen door and inside the kitchen, he saw two (2) spent shell casings and a live round of ammunition. Later in time, when Detective Neal the lead investigator was interviewing Torres, Torres provided a cellphone number from his own phone which he said belonged to Appellant. Detective Neal called the number while Cpl. Meik still had the cellphone and it registered Detective Neal's phone number.

Detective Neal also took a statement from Torres after he had been admitted to the hospital. Detective Neal unsuccessfully attempted to speak to Appellant regarding the incident under investigation due to Appellant's inability to speak English. Neal was also present during Torres' preliminary hearing testimony and took an additional statement from him approximately two weeks before trial.

Detective Neal testified that the "meat and potatoes" of Torres' story, specifically that Appellant came to his back door to rob him, he was shot and the men fought outside, had not changed since the date of the incident. He acknowledged that some details were not provided by Torres until much later, such as, Appellant's purpose in coming over was to smoke marijuana; however, Detective Neal stated that Torres explained that his reason for not admitting he had planned to smoke marijuana was to prevent Ms. Rodriguez from being kicked out of the federal housing program that allowed her and the children to live in Hall Manor.

6

In addition, Dr. Robert Scott Rankin ("Dr. Rankin"), the emergency room physician who treated Torres, testified that during the intake process he described being involved in an attempted robbery at gunpoint, being pistol-whipped to his head, fighting and getting shot in the leg. Dr. Ranking stated that Torres' injuries were consistent with this story and more specifically, being hit in the head with the butt of a gun and being shot by a .40 caliber weapon.

Officer Marc McNaughton ("Officer McNaughton") conducted a forensic investigation of the crime scene. Officer McNaughton collected the keys and cellphone from the grass, a spent shell casing from the kitchen doorway, a spent shell casing on the back porch, a live round in the kitchen and a set of eyeglasses. Officer McNaughton noted a significant amount of blood on the kitchen floor and a bullet hole in the refrigerator for which no bullet was found. After checking with other officers regarding the results of the search of the residence, he collected no other evidence as none was found. Following his investigation of the crime scene, he went to Harrisburg Hospital to document Torres' and Appellant's injuries. With respect to Torres, Officer McNaughton photographed a gash to his forehead and the injuries to the inside and outside of his legs.

The firearm, shell casings and live round were submitted to the Pennsylvania State Police ("PSP") forensics lab for examination. Todd Neumeyer ("Mr. Neumeyer") of the PSP forensics lab conducted the examination of these items and testified at trial as an expert forensic firearm and tool mark examiner. Mr. Neumeyer concluded within a reasonable degree of scientific certainty that the two discharged shell casings were fired from the gun recovered at the crime scene which was fully operational.

7

## DISCUSSION

Appellant's only challenge to the jury's verdict is that it was contrary to the weight of the evidence presented at trial. More specifically, Appellant claims that this Court erred in denying his Post-Sentence Motion because the verdict rendered by the jury is shocking to one's sense of justice as victim's testimony was "inconsistent, contradictory, and conflicting;" the weapon was only connected to the victim; and Appellant was walking back to the crime scene after the shooting.

Our Superior Court has stated:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The fact finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

Commonwealth v. Weathers, 95 A.3d 908, 910-911 (Pa. Super. 2014) *citing* Commonwealth v. Diggs, 597 Pa. 28, 949 A.2d 873, 879–80 (Pa.2008) (internal citations omitted). When a defendant motions for a new trial based on a weight of the evidence claim, he concedes that sufficient evidence exists to sustain the jury's verdict. Commonwealth v. Rosetti, 863 A.2d 1185, 1191-1192 (Pa. Super. 2004).

Appellant was found guilty of robbery, aggravated assault and recklessly endangering another person. According to the Pennsylvania Crimes Code, an

8

individual commits a robbery "if, in the course of committing a theft, he [] inflicts serious bodily injury upon another...."18 Pa.C.S. § 3701(a)(1). As charged in this case, for a person to be guilty of aggravated assault, it must be proven beyond a reasonable doubt that he "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." 18 Pa.C.S. § 2702(a)(1). Finally, to be guilty of recklessly endangering another person, it must be proven that "one recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Review of the record in light of the statutory elements reveals that, the evidence established at trial and the inferences drawn therefrom, which formed the basis of the jury's verdict is not so lacking or contrary to that verdict as to shock this Court's sense of justice.

The essence of Mr. Torres' story and the supporting evidence was consistent: Appellant called Torres so they could smoke marijuana at his house; Appellant appeared at his kitchen door with a gun pointed in Torres' face demanding he "give him everything"; Torres refused thinking it was joke resulting so Appellant hit him in the head with the butt of the gun; a struggle for the gun ensued resulting in Torres being shot in the leg; Torres disarmed Appellant and a physical fight spilled into the yard.

The record indicates that several witnesses including, Officers Bates, Brooks and Johnsen along with Detective Neal, presented testimony relaying the same essential story. More importantly, Ms. Rodriguez and the neighbor, Ms. Perez, both who were eyewitnesses to all or part of the incident, corroborated the story. Further, the testimony by law enforcement and Dr. Rankin established that both individuals' injuries were

9

consistent with Torres' story. Finally, the physical evidence presented in the form of photographs, the ballistics testing and the cellphone call support Torres' version of events, as well.

Of more import though is the well-settled legal principle that the resolution of any weight or credibility determination is within the purview of the jury. Weathers, *supra.* The Appellant's main contention on appeal is that the victim's testimony was "inconsistent, contradictory, and conflicting...." As the fact-finder it is up to the jury to resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty. Id. In the instant matter, it is clear that the jury resolved any concerns regarding credibility or inconsistency in Torres' testimony and chose to believe his version of events. Based on the evidence of record, as set forth above, this Court cannot conclude that the verdict shocks one's sense of justice. Therefore, Appellant's claim must fail.

RICHARD A. LEWIS, JUDGE

MEMORANDUM DATE:
Dec. 12, 2014

DISTRIBUTION: 12-12-14 @ 12:45pm
Christopher M. Jason, Esq., Dauph. Co. District Attorney's Office 1|0
Ryan H. Lysaght, Esq., Dauph. Co. Public Defender's Office 1|0
Clerk of Courts KC
X Superior Court Prothonotary Mail
FILE – Judge Lewis 1|0

10