J-A21014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER ANTHONY THOMAS, | |
| Appellant | No. 1028 WDA 2016 |

Appeal from the Judgment of Sentence Entered April 4, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014007-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 07, 2017**

Appellant, Christopher Anthony Thomas, appeals from the judgment of sentence of 42 to 84 months' incarceration, imposed after he was convicted of carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1).  We affirm.

The trial court summarized the procedural history and the evidence presented at trial as follows:

> On January 13, 2016, a jury found Appellant … guilty of one count of Carrying a Firearm Without a License.[1]  This [c]ourt sentenced Appellant on April 4, 2016, to a term of 42 to 84 months[' incarceration].  Appellant's Post-Sentence Motion was denied on June 15, 2016.  Appellant filed a Notice of Appeal on July 15, 2016[,] and his Statement of Errors Complained of on Appeal on August 4, 2016.

> [1] The jury acquitted [Appellant] on charges of Attempted Homicide, Robbery, Aggravated Assault, Burglary, and Criminal Conspiracy.

***

**<u>SUMMARY OF THE EVIDENCE</u>**

At trial, Damien Beam testified that in the early morning hours of July 22, 2014, he was playing video games in his living room when he heard a knock at the door. [Mr.] Beam opened the door and two men pushed their way into the apartment. [Mr.] Beam testified that Appellant pulled a semiautomatic pistol from his waistband and demanded that [Mr.] Beam drop everything he had. Appellant pointed the gun at [Mr.] Beam's chest from a distance of three to five feet away. Appellant and the other assailant, later identified as David Calhoun, started to bicker, and [Mr.] Beam s[e]ized the opportunity to grab a shotgun from behind the tapestry and told his intruders to get out or he would shoot. Instead of leaving the house, Appellant shot at [Mr.] Beam and missed. [Mr.] Beam returned fire and hit Appellant. Next, [Mr.] Calhoun charged [Mr.] Beam. [Mr.] Beam shot and hit [Mr.] Calhoun, who fell on top of [Mr.] Beam pulling the tapestry down as he fell. The shot knocked [Mr.] Calhoun unconscious. [Mr.] Calhoun awoke when [Mr.] Beam attempted to extricate himself from under [Mr.] Calhoun's unconscious body. [Mr.] Beam and [Mr.] Calhoun wrestled for the shotgun. [Mr.] Beam prevailed and fatally shot [Mr.] Calhoun in the neck.

Officer John Shamlin of the Pittsburgh Police Department testified that he was the first police officer to arrive on scene and he observed Appellant lying on the ground outside the front door of [Mr.] Beam's building. Officer Shamlin asked Appellant how many times he had been shot, and Appellant replied that he just needed a glass of water and he would be fine. Officer Shamlin then asked twice if Appellant knew who had shot him and Appellant said he did not know. Officer Shamlin asked Appellant his name, but Appellant did not reply. One of the officers who had arrived while Appellant and Officer Shamlin were speaking to each other observed a gun at the scene. When Officer Shamlin heard someone mention a gun, he surveyed the area and observed to his right a semiautomatic handgun, later identified as a Ruger, in the grass a short distance from Appellant. When Officer Shamlin was speaking with Appellant, [Mr.] Beam and his girlfriend came to the entry door of the apartment complex and [Mr.] Beam told the Officer that he had shot and killed someone in his apartment. Officer Shamlin entered the apartment and observed shotgun shell casings both inside and outside of [Mr.] Beam's apartment, and a magazine[2] for a semiautomatic firearm on the carpet near [Mr.] Calhoun's body.

[2] Commonwealth Exhibit 19, which was admitted at trial, is a photograph taken contemporaneously at the crime

- 2 -

scene, which depicts the inside of the apartment. The loaded magazine is clearly visible in the living room near the futon.

Detective Dale Canofari testified that he is familiar with Ruger semiautomatic handguns and that the Ruger would only fire one round if its magazine was not properly inserted. He also stated that the clip release is located near the trigger and one could easily release the magazine accidentally, particularly in a high stress situation.

Detective John Klaczak testified that he was present when the crime scene was processed and photographed by his partner, Detective Pat Moffatt. Of note regarding the charge for which Appellant was convicted, the photograph admitted as Exhibit 29 depicts the front of [Mr.] Beam's apartment building. In a small grassy area, alongside the concrete steps leading up from the sidewalk, the photograph clearly shows a black pistol laying in the grass. Another photograph depicts Appellant's bloody clothes and a towel on the concrete landing. Other photographs depict blood on the landing and the steps. Detective Klaczak collected the firearm recovered from the grassy area and determined that it was a black Ruger P95 model with a silver slide, black frame, with no magazine in it, and no round in the chamber. Detective Klaczak testified that the pistol recovered in the grass was reported stolen out of Pitcairn Police Department.

Detective John Adams testified that he recovered a bullet on the floor of the bedroom/dining room area of the apartment. He also testified that he observed and photographed a mark in the brick on the lower left of the fireplace that he believed was caused by a bullet. The Detective clarified that the bullet was recovered from the same room as the fireplace. Detective Adams further testified that no fingerprints were recovered from the Ruger firearm.

Detective Robert Shaw testified that he interviewed [Mr.] Beam after the shooting, and [Mr.] Beam told the Detective a substantially similar story to his testimony at trial. [Mr.] Beam told Detective Shaw that Appellant and [Mr.] Calhoun forced their way into [Mr.] Beam's apartment and Appellant pulled a gun out of his waistband. Appellant pointed the gun at [Mr.] Beam and attempted to rob him, but Appellant got distracted by a disagreement with [Mr.] Calhoun. [Mr.] Beam obtained a shotgun from the bedroom and racked it to convince the

intruders to leave. Appellant shot at [Mr.] Beam through a large tapestry separating the two rooms and [Mr.] Beam returned fire. The Commonwealth then produced the tapestry and displayed the bullet hole in the fabric to the jury. Detective Shaw testified that the on-scene evidence including the ballistic evidence, the locations of the firearm, the blood trail, locations of the actors and the tapestry all corroborate [Mr.] Beam's account of the events that evening.

Appellant called Heather Antonelli, [Mr.] Beam's neighbor, who testified that she heard what she thought were fireworks. She looked out her window and saw a man stumbling down the stairs as if he was drunk. She and her roommate, Michael Chorney[,] went to help him. Appellant was on the ground, bleeding, and Appellant told her to call 911 because he had been shot. She did not see a firearm anywhere near Appellant. [Mr.] Chorney testified similarly, specifically, that he did not see a gun lying on the front lawn.

Frederick Wentling testified as an expert for the defense in the field of firearms and toolmarkings. He reviewed crime scene photographs, one of which was of the handgun. He testified that the photograph is insufficient to determine the ejection pattern, specifically where the cartridge casing would have landed.

Trial Court Opinion (TCO), 12/14/2016, at 2-6 (internal citations omitted).

As mentioned *supra*, Appellant filed a post-trial motion, in which he challenged, *inter alia*, whether the verdict was against the weight of the evidence. The trial court subsequently denied Appellant's weight claim. Appellant then timely filed a notice of appeal and timely complied with the trial court's instruction to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Presently, Appellant raises a single issue for our review:

Was [Appellant's] verdict of guilty for Carrying a Firearm Without a License rendered against the weight of the evidence?

Appellant's Brief at 5 (unnecessary emphasis omitted).

- 4 -

Initially, we set forth our standard of review:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict…. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.

A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion….

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Commonwealth v. Brown*, 48 A.3d 426, 432 (Pa. Super. 2012) (citation omitted).

In the case *sub judice*, the jury convicted Appellant of carrying a firearm without a license pursuant to 18 Pa.C.S. § 6106(a)(1). That statute states, in relevant part, the following:

[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Appellant concedes that, at trial, he "stipulated to the operability of the firearm found near his person and did not contest the Commonwealth's evidence regarding [his] lack of license to carry a firearm." Appellant's Brief at 15 (citation omitted). In addition, Appellant admits that "the evidence at

trial clearly showed that [he] was not, at the time in question, in his home or place of business." *Id.* Thus, according to Appellant, "the only element of the crime that was contested was whether [he] concealed the firearm on or about his person." *Id.*

In determining that the verdict was not against the weight of the evidence and denying Appellant's request for a new trial, the trial court explained:

> This verdict is not so contrary to the evidence as to require a new trial. The physical evidence in this case, as well as [Mr.] Beam's testimony, strongly support the jury's conclusion that Appellant possessed the Ruger handgun. First, the gun itself, without the magazine, was recovered a short distance from Appellant. Although neither [Ms.] Antonelli nor [Mr.] Chorney observed the gun, their focus was on ensuring [that] Appellant receive adequate medical care for his gunshot wound just as the first responding officer who also initially failed to notice the gun. A trail of blood led from Appellant to [Mr.] Beam's apartment. A bullet and a magazine matching the Ruger were recovered inside the apartment, and a strike mark was observed on the fireplace, which corroborate [Mr.] Beam's version of events. [Mr.] Beam's testimony regarding a home invasion gone wrong, with Appellant not only possessing a gun but shooting at [Mr.] Beam, as well as [Mr.] Beam's subsequent statements, are supported by the physical evidence. This verdict does not shock one's conscience and Appellant's claim of error is without merit.

TCO at 6-7.

Despite the trial court's reasoning, Appellant claims that Mr. Beam's testimony is "dubious" and "should have been disregarded." *See* Appellant's Brief at 21-22. Appellant explains that "[t]he principal evidence presented by the Commonwealth to establish that [he] concealed a firearm on or about his person was the testimony of [Mr.] Beam[,]" which Appellant argues

"should not have been credited as it was clearly self-serving and was contradicted by several items of tangible evidence as well as the testimony of other witnesses." *Id.* at 14, 16 (footnote omitted). Appellant contends that "[i]n the absence of [Mr.] Beam's testimony, there is simply no evidence to indicate that [Appellant] ever carried a firearm in a concealed manner." *Id.* at 22. As a result, Appellant says his conviction "is shocking to one's sense of justice, and it was thus an abuse of discretion for the trial court to deny [his] motion for a new trial." *Id.* at 23.

Our review of the record shows that Mr. Beam gave the following testimony at trial:

> [The Commonwealth:] And you opened the door, and do you get to see the faces of the two individuals that you described?
>
> [Mr. Beam:] Yes.
>
> [The Commonwealth:] What happens next?
>
> [Mr. Beam:] I get rushed backwards into my hallway area that leads into the living room. And that is when [Appellant] pulled out his gun and said, "Drop everything you have." You know, "Give me everything you got." And I kind of just froze right there.
>
> ***
>
> [The Commonwealth:] Did you take a look at the weapon that you are describing?
>
> [Mr. Beam:] I did not see it at the point before [Appellant] pulled it out, but it was a semiautomatic pistol.
>
> [The Commonwealth:] Did you actually see him pull it out?
>
> [Mr. Beam:] Yes, he pulled it out of his front waistband.
>
> [The Commonwealth:] And do you see it then when it is out?

[Mr. Beam:] Yes.

N.T. Jury Trial, 1/5/2016-1/13/2016, at 85-86.

Further, Detective Robert Shaw explained that Mr. Beam gave a consistent description of the pistol's concealment during an interview conducted in the early morning hours, shortly after the incident occurred:

> [The Commonwealth:] Detective, did [Mr. Beam] talk to you about where [Appellant] produced this pistol from?
>
> [Detective Robert Shaw:] Yeah, it's one of the things we asked [during the interview]. [Appellant] pulled it out of his waistband from a concealed position.

N.T. Jury Trial, 1/5/2016-1/13/2016, at 370; **see also id.** at 361.

Appellant claims that Mr. Beam's testimony must be discounted in its entirety, including the portion *supra*, as "the many contradictions between [Mr.] Beam's testimony and the other evidence at trial, combined with [Mr.] Beam's own admission to lying on the stand, left the fact-finder with no manner in which to distinguish between which [portion] of [Mr.] Beam's testimony was true and which was false." **See** Appellant's Brief at 22. Specifically, Appellant states that portions of Mr. Beam's testimony were contradicted by the physical evidence, citing the single bullet hole found in the tapestry, the lack of blood on Mr. Beam following his alleged struggle with Mr. Calhoun, and the locations of where certain evidence relating to the Ruger was recovered by detectives. **Id.** at 18-20. Furthermore, Appellant lists multiple ways in which Mr. Beam's testimony was inconsistent with his own statements and the testimony of other witnesses, pointing toward discrepancies pertaining to Mr. Beam's involvement with selling marijuana,

where police detained him after the incident, and if he had known Mr. Calhoun prior to the night in question. *Id.* at 20-21. Because of these purported discrepancies, Appellant maintains that "no rational trier of fact could have credited [Mr. Beam's] testimony as truthful." *Id.* at 21-22.

In short, Appellant attacks the credibility of Mr. Beam. However, "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is **extremely limited**. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." ***Commonwealth v. Rossetti***, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted; emphasis added). Further, it is well-established that "[t]he weight of the evidence is a matter exclusively for the finder of fact who is free to believe, all, part, or none of the evidence and to determine the credibility of witnesses." ***Commonwealth v. Cox***, 72 A.3d 719, 722 (Pa. Super. 2013) (citation omitted). We reiterate that "[o]ur purview … is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Id.* (citation omitted).

Here, we conclude that the trial court did not abuse its discretion in finding that the jury verdict did not shock its conscience. The jury

considered the evidence presented at trial, and determined that Appellant was guilty of carrying a firearm without a license. Although there may be some inconsistencies with respect to Mr. Beam's testimony, various aspects of the "on-scene evidence … corroborate [Mr.] Beam's account of the events that evening." TCO at 5 ("Detective Shaw testified that the on-scene evidence including the ballistic evidence, the locations of the firearm, the blood trail, locations of the actors and the tapestry all corroborate [Mr.] Beam's account of the events that evening."); *see also id.* at 7 ("[Mr.] Beam's testimony regarding a home invasion gone wrong, with Appellant not only possessing a gun but shooting at [Mr.] Beam, as well as [Mr. Beam's] subsequent statements, are supported by the physical evidence."). Accordingly, we do not deem the evidence, namely Mr. Beam's testimony, to be "so unreliable and/or contradictory as to make any verdict based thereon pure conjecture[.]" *Rossetti*, 863 A.2d at 1191 (citation omitted). We therefore determine that the trial court did not abuse its discretion in denying Appellant's weight claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/2017

- 10 -