J-A24001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICK HUGHES | |
| Appellant | No. 1071 EDA 2014 |

Appeal from the Judgment of Sentence January 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008292-2009

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.          **FILED OCTOBER 23, 2015**

Appellant, Rick Hughes, appeals from the judgment of sentence entered on January 24, 2014, by the Honorable Sandy L. V. Byrd, in the Court of Common Pleas of Philadelphia County. We affirm.

The factual history of this matter is well known to the parties, so we rely upon the trial court's recitation of the facts as set forth on pages 2-8 of the Rule 1925(a) opinion. Briefly, Hughes and Christopher Cottle entered the home of the victim, Joseph Brigman. While Cottle restrained the victim, Hughes stabbed the victim to death. Thereafter, the victim's home was set on fire in what neighbors described as an explosion. The victim's body was

---

[*] Retired Senior Judge assigned to the Superior Court.

discovered inside of the home. Hughes's brother later confessed to being the "lookout" and detailed the incidents of the crime to the police.

A jury convicted Hughes of arson, conspiracy to commit arson, and recklessly endangering another person.[1] On January 24, 2014, the trial court sentenced Hughes to an aggregate term of 15-30 years' incarceration, followed by 10 years' probation. Hughes filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Hughes raises the following issues for our review.

I.   Did the trial court err by denying Appellant's Motion for Directed [V]erdict?

II.  Should Appellant's convictions be vacated where the evidence presented was insufficient to sustain the verdict?

III. Is Appellant entitled to a new trial where the verdict was against the weight of the evidence?

IV.  Did the trial court err by admitting the unqualified medical expert testimony of Fire Marshall Ramseur?

V.   Did the trial court err by admitting improper evidence of Appellant's prior bad acts?

Appellant's Brief at 2.

We proceed by first addressing Hughes's weight of the evidence claim. We note that "a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Thomson*, 93 A.3d 478, 490 (Pa.

_____

[1] 18 Pa.C.S.A. §§ 3301(a)(1)(i), 903(a)(1), and 2705, respectively.

Super. 2014) (citing Pa.R.Crim.P. 607). Failure to do so will result in waiver of the claim on appeal. *See id*.

Instantly, Hughes failed to raise a challenge to the weight of the evidence to support his conviction either at sentencing or in his post-sentence motion.[2] Therefore, this claim is waived. *See id*.

Upon review of Hughes's remaining claims, we observe that issues I. and II. both raise challenges to the sufficiency of the evidence to sustain Hughes's convictions.[3] *See Commonwealth v. Manley*, 985 A.2d 256, 271-272 (Pa. Super. 2009) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge."). Appellate review of a challenge to the sufficiency of the evidence is as follows.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

---

[2] Hughes' post-sentence motion, filed February 3, 2014, did not include a weight of the evidence claim.

[3] Hughes mistakenly uses the term "Motion for Directed Verdict" rather than "Motion for Judgment of Acquittal" throughout his brief.

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valentine*, 101 A.3d 801, 805 (Pa.Super. 2014) (citation omitted; brackets in original).

Hughes's remaining claims challenge the admissibility of evidence. We note that "the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa. Super. 2012) (internal citations omitted).

"The purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury." *Commonwealth v. Mendez*, 74 A.3d 256, 262 (Pa. Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014). A layperson, however, "may testify to distinct facts observed by him concerning the apparent physical condition or appearance of another." *Commonwealth v. Counterman*, 553 Pa. 370, 404, 719 A.2d 284, 301 (1998) (citation omitted).

In reviewing a court's decision to permit evidence of alleged prior bad acts, we note that it is impermissible to present evidence at trial of a defendant's prior bad acts or crimes to establish the defendant's criminal

character or proclivities. *See* Pa.R.E. 404(b); *Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008). Such evidence, however, may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa. Super. 2007) (citation omitted).

We have reviewed Hughes's issues raised on appeal, along with the briefs of the parties, the certified record and the applicable law. Having determined that the Honorable Sandy L. V. Byrd's opinion ably and comprehensively disposes of the issues raised on appeal, with appropriate reference to the record and without legal error, we will affirm on the basis of that opinion. *See* Trial Court Opinion, 12/3/14, at 10-17, 21-23.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2015

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0008292-2009

                       v.                        :     SUPERIOR COURT



RICK HUGHES                    :

                                    :     1071 EDA 2014

**FILED**

DEC 03 2014

Criminal Appeals Unit
First Judicial District of PA

## OPINION

Byrd, J.                                                       December 3, 2014

Rick Hughes filed a direct appeal from this court's October 1, 2013 judgment of sentence. In accordance with the requirements of PA. R.APP. PROC. 1925, this court submits the following Opinion.

## I. PROCEDURAL HISTORY

Defendant Rick Hughes was arrested on April 17, 2009 and charged with a range of offenses.[1] On April 24, 2014 defendant's jury trial was aborted due to a confrontation clause violation, and a new trial commenced on the same day. On May 1, 2013, defendant was again granted a mistrial after the jury hung on the charges of arson, recklessly endangering another person, conspiracy to commit arson, conspiracy to commit murder, and murder of the third degree.

On October 25, 2013, after a jury trial before this court, defendant was convicted of arson, recklessly endangering another person, and conspiracy to commit arson. On January 24, 2014,

---

[1] Defendant was charged with murder of the first, second and third degrees (18 PA. CONS. STAT. ANN. §§ 2502(a-c)); criminal conspiracy-engaging in murder § 903 (a)(1); arson § 3301(a)(1)(i); causing catastrophe § 3302 (a); possessing an instrument of crime § 907 (a); recklessly endangering another person § 2705; conspiracy to commit arson § 903 (c);

defendant was sentenced to 10-20 years on the arson charge and a consecutive 5-10 years, followed by 10 years consecutive reporting probation on the conspiracy to commit arson; the charge of recklessly endangering another person was merged with arson.[2] On February 3, 2014, defendant filed a Post-Sentence Motion to Reconsider Sentence and the motion was denied on March 7, 2014 following a hearing on the matter. Defendant filed a Notice of Appeal on April 6, 2014. Appellate counsel entered their appearance for defendant on April 9, 2014. This court then issued an order on April 9, 2014 directing defendant to file a Statement of Matters Complained of on Appeal in accordance with PA. R.APP. PROC. 1925 (b). On April 30, 2014, defendant filed a Motion for an Extension of Time to File a Supplemental Statement of Errors Complained of on Appeal pending receipt of the notes of testimony. On May 9, 2014 an extension to file was granted until May 30, 2014. The said statement was received in judicial chambers on June 3, 2014, dated June 1, 2014, and appears never to have been filed.

## II. FACTUAL BACKGROUND

At trial the Commonwealth presented evidence which when viewed in the light most favorable to the Commonwealth as the verdict winner, established the following.

In 2007 defendant had been dating the mother of one of his ten children, Lasheena Cottle, for approximately six months. *N.T.* 10/22/2013 at 178. Ms. Cottle resided in her family home located at 2428 Patton Street in North Philadelphia, Pennsylvania, with her uncle and two older brothers, Christopher and Brandon Cottle.[3] Although defendant resided in West Philadelphia with his mother, he would often visit the Cottle residence during the day and sleep there over night. *Id.* at 179.

---

and conspiracy to commit robbery § 903 (c).

[2] Defendant received an aggregate sentence of 15-30 years confinement followed by 10 years consecutive reporting probation.

[3] The Cottle brothers were previously arrested and convicted in separate proceedings regarding the present factual matter. *N.T.* 10/24/2013 at 24. Brandon Cottle, who was implicated in the death of decedent by virtue of a guilty plea, testified as

2

*Commonwealth v. Rick Hughes*

Defendant was seen at the Cottle residence in the early morning hours on January 13, 2007. *Id.* Later that morning, around 10:00 a.m., a loud explosion was heard at 2421 North Patton Street, which is just across the street from the Cottle residence. *Id.* at 127. The property was found to be engulfed in flames and the surrounding area was filled with smoke. *Id.* at 42, 129.

David Smith, a resident of the area testified that immediately after the explosion, he saw Christopher Cottle running with a limp from the property along with another male. *Id.* at 140. Although Mr. Smith failed to make a conclusive in court identification of defendant as the other male suspect,[4] he definitively identified the other male as "Lasheena Cottle's boyfriend" in a verbatim statement taken by homicide detectives during an interview six weeks after the incident. *Id,* at 140-141,146, 158-161. Ms. Cottle testified that although she last saw defendant approximately 15-20 minutes before the explosion, he was not in her home located across the street from 2421 North Patton Street, at the time of the explosion. *Id.* at 184, 219. Philadelphia fire fighters arrived on scene shortly after 10:00 a.m. where the small row home, tightly attached to adjacent properties, was fully engulfed in flames. *Id.* at 27, 42, 144. At approximately 10:24 a.m., while members of the fire department were still on the scene, and after an initial examination of the property, the on duty fire marshal discovered the decedent's body on the first floor of the two-story house. *Id.* at 24, 42.

The body of decedent, fifty-eight year old Joseph Brigman, was found in the living room area, in front of what remained of a sofa, lying in a prone position on his right side with his head against the wall. *Id.* at 69, 90. After examining decedent's body, fire marshals discovered several suspicious puncture wounds and detectives were then notified and dispatched to the location. *Id;* *N.T.* 10/24/2013 at 13. Upon arrival, detectives observed that the street was littered with debris, the

---

an accomplice that on the day of the fire he last saw decedent when he sold decedent crack cocaine. *Id.* at 24, 34.
[4] Mr. Smith sustained a gunshot wound to the head which affected his pre-2010 long-term memories. *N.T.* 10/22/13 at 162,167-168.

3

*Commonwealth v. Rick Hughes*

windows on the property were blown out, the front door was blown off, and the back wall was destroyed. *Id.* While surveying the neighborhood and searching for potential witnesses, detectives observed Christopher Cottle walking around the area of the crime scene and in front of the property. *Id.* at 14. Detectives testified that Mr. Cottle appeared to always be close by when they unsuccessfully attempted to approach and speak to potential witnesses. *Id.* at 15.

Mr. Smith further testified that later that day, after he saw Christopher Cottles limping from decedent's property following the explosion, he asked Mr. Cottles "why he would do something like that?". Mr. Cottle responded that decedent owed him $50.00 or $75.00 and that "[n]o body takes food out of [his] mouth." *N.T.* 10/22/2013 at 151. Mr. Cottle also indicated to Mr. Smith, and Ms. Cottle on a separate occasion, that he was limping because he had been stabbed. *Id.* at 152, 190. Ms. Cottle testified that later that evening she visited defendant in West Philadelphia and saw burns on his hand, face and ear, and that some of his hair was burnt. *Id.* at 187; 221-22. When Ms. Cottle confronted defendant and asked him about the origin of the burns, he replied "don't worry about it." *Id.* at 188. On January 14, 2007, at approximately 10:48 a.m. defendant was admitted to Mercy Fitzgerald Hospital where he was treated for second-degree burns sustained to his right hand, extending to his wrist and forearm area. *Id.* at 94-96.[5]

Defendant was not seen in the area of the 2400 block of North Patton Street for the next several months. On March 28, 2007 Officer Christopher Hulmes, while dressed in plain clothes and working undercover narcotics in North Philadelphia, observed defendant approach Christopher Cottle in a public park. *N.T.* 10/23/2013 at 151-153. The two engaged in a conversation, and Mr. Cottle then removed an object from his pocket, unraveled a cigar, poured its contents out and emptied it into the cigar wrapper. *Id.* Defendant and Mr. Cottle conversed for approximately 5-10

4

*Commonwealth v. Rick Hughes*

minutes, while sharing the lit cigar back and forth. *Id.* at 154. After they finished the cigar, the officer observed defendant and Mr. Cottle walk in a southbound direction along North Patton Street to the area of 2428 North Patton Street. *Id.* at 155. Mr. Cottle then attempted to enter the premises, while defendant stood beside him at the front door. *Id.*

Fire Marshal Bordes Ramseur testified as an expert in the field of the cause and origin of fires, and offered his opinions to a reasonable degree of scientific and professional certainty. *N.T.* 10/22/2013 at 36. On Saturday morning, January 13, 2014, at 10:24 a.m., after being dispatched to the scene, Fire Marshal Ramseur observed debris from the interior of the dwelling scattered about the street and on the sidewalk. *Id.* at 47. He testified based on his training and experience, that the scattered debris was a clear indicator that an explosion had occurred. *Id.* Upon entering what remained of property structure, the canine accelerant detection dog that accompanied him alerted to several locations on the first floor. *Id.* at 44. Several samples were collected from those locations and submitted to the criminalistics laboratory. *Id.* Fire Marshal Ramseur testified that the fire was intentionally set and was incendiary in origin. *Id.* at 45-46. Fire Marshal Ramseur's opinions were based on personal observations of the fire scene, samples that were collected and tested, together with his training and experience. *Id.* at 46. He explained that an incendiary fire requires human involvement and thus concluded that someone intentionally applied an open flame to a combustible, flammable or ignitable liquid causing the explosion and subsequent fire at 2421 North Patton Street. *Id.* The criminalistics report revealed that the collected samples contained gasoline and a heavy petroleum distillate such as kerosene, diesel fuel or some charcoal starters. *Id.* at 81.

Fire Marshal Ramseur further opined that due to the magnitude of the explosion, there was a delay between the time the ignitable liquid was poured throughout the first floor and the application

---

[5] Defendant reported to hospital personnel that his injuries were sustained on January 13, 2007 as a result of a grilling

5

*Commonwealth v. Rick Hughes*

of the open flame. *Id.* at 47. He explained that the vapors had time to emanate from the ignitable liquid and rise to such a level that the violent explosion occurred upon contact with the heat source somewhere around the vestibule area, causing extensive heat and smoke damage to the first and second floors. *Id.* at 48-49, 63. Following common practice and accepted methodology, Fire Marshal Ramseur examined the property's utilities and excluded the basement's electrical box and gas meter or any related leaks, as potential ignitable sources of the vapor explosion. *Id.* at 60-62. In fact, Fire Marshall Ramseur noted that the electrical box was intact and in good shape, and the gas meter was also intact with a lock on it, indicating that the property did not have gas service at the time of the explosion. *Id.* at 61. Fire Marshal Ramseur further testified, based on his training and experience, that the person who started the fire by applying an open flame to an ignitable source would have sustained second to third degree burns. *Id.* at 92-93. The fire marshal's testimony concluded with him reviewing defendant's Mercy Fitzgerald Hospital medical record and testifying to a reasonable degree of scientific and professional certainty, that defendant's injuries were consistent with those that a person would sustain by applying an open flame to an area where vapors accumulated from an ignitable source. *Id.* at 97.

Dr. Samuel Guilino, Chief Medical Examiner, testified as the Commonwealth's expert in the field of forensic pathology after reviewing autopsy photographs and a report prepared by Dr. Preston, now retired, who performed the autopsy on decedent's body in 2007. *N.T.* 10/23/2013 at 11. Dr. Guilino concluded to a reasonable degree of medical certainty that decedent's death was caused by multiple stab wounds which resulted in blood loss, and that the manner of death was homicide. *Id.* at 13, 21. During the autopsy it was observed that decedent's body, which had been burned and charred by the fire, also had a number of stab wounds. *Id.* at 15. Decedent's clothing was severely burned and

---

accident with lighter fluid. *Id.* at 109-10.

6

*Commonwealth v. Rick Hughes*

charred; all that remained were portions of a charred belt, a pair of underpants, a shirt and sweater. *Id.* at 15. The corresponding holes in decedent's clothes led Dr. Guilino to opine that decedent was wearing the clothing when he was stabbed. *Id.* at 15. As a result of the burning and charring of decedent's skin, the medical examiner was unable to conclusively determine what object caused the stab wounds. *Id.* at 18.

Dr. Guilino, however, testified that the stab wounds appeared to be inflicted by a sharp object with a single edge blade, such as a knife. *Id.* at 18. Decedent received multiple stab wounds to the chest including five stab wounds through the skin in between several ribs and into the left lung, causing bleeding in the left lung chest cavity; five shallow stab wounds to the left side of decedent's head around his ear; a stab wound to the lower right of decedent's jaw which went deep enough to strike decedent's carotid artery and the left internal jugular vein, causing significant bleeding; and one stab wound to the shoulder and back which struck the right lung and caused bleeding into the right lung chest cavity. *Id.* at 18-19. Decedent also suffered from thermal heat burns to the right side of his torso, which was pressed against the floor and protected from the fire, and the remaining approximately 70% of his body was charred and blackened from burns. *Id.* at 21, 23-24. The absence of soot and carbon monoxide in decedent's trachea evidenced that he had not inhaled any smoke and led Dr. Guilino to opine that decedent was already dead when the fire occurred. *Id.* at 22. Decedent's toxicology report revealed that he had taken cocaine recently prior to his death and that he was a habitual cocaine user. *Id.* at 32.

Forensic Scientist Terrance Lewis testified as the Commonwealth's expert in the field of DNA analysis and examination, and offered his opinions to a reasonable degree of scientific certainty. *Id.* at 46. He concluded that the fire destroyed all DNA and fingerprint evidence by burning off blood residue and skin tissue. *Id.* He also concluded that the fire, combined with the water used

7

*Commonwealth v. Rick Hughes*

by the fire department to extinguish it, further hindered recovery of any physical evidence. *Id.* Thus, no evidence was recovered linking defendant or any other person to the property. *Id.* at 48, 58. Forensic Scientist Ryan Gallagher testified as the Commonwealth's expert in the field of identifying biological material and ignitable liquids and concluded to a reasonable degree of scientific certainty that all samples submitted contained gasoline with a heavy petroleum distillate.[6] *Id.* at 87. Forensic Scientist Gallagher opined that the evidence of both substances was likely due to a container being used that possessed one liquid and once empty was filled from the second liquid, with remnants of the first liquid still contained therein. *Id.* at 89.

### III. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In accordance with PA. R.APP. PROC. 1925 (b), defendant raised the following issues in his Statement of Matters Complained of on Appeal.[7]

1. The court erred when it denied defendant's Motion for Directed Verdict.

2. The evidence is insufficient to sustain the verdicts of guilt for arson and conspiracy to commit arson, where there was no evidence of testimony presented regarding a conspiratorial relationship between defendant and either of the codefendants. There was no evidence presented to support an agreement, nor overt actions in furtherance of the conspiracy, nor defendant's presence or participation at or around the scene.

3. The evidence is against the weight of the verdict where it is undisputed that Brandon and Christopher Cottle were convicted of these crimes, and neither person implicated defendant as an accomplice, conspirator, or other participant.

4. The evidence is insufficient to sustain the verdict where there is no evidence to connect defendant with the crime scene or the crime. The evidence presented at trial consisted solely of Lasheena Cottle's testimony that she saw burns on Defendant. Said burns were not corroborated by any medical records and said statements were repudiated at trial.

5. The verdict is against the weight of the evidence where there is no physical or circumstantial evidence connecting defendant to the scene.

---

[6] Such as kerosene, diesel fuel and some charcoal starters. *N.T.* 10/23/14 at 88.

[7] The statement below was taken verbatim from defendant's filed Statement of Errors.

8

*Commonwealth v. Rick Hughes*

6. The evidence is insufficient to sustain the verdict where there was no testimony regarding the actual ignition source of the fire, including either the open flame, and/or a definitive explanation of the ignitable fluids which actually caused the fire.

7. The evidence is insufficient to sustain the verdict where the medical records were inconsistent with injuries attendant to an explosion. Defendant injuries were inconsistent with the testimony of the Fire Marshall[sic], and any connections between defendant injuries in[sic] the crime scene were speculative at best.

8. The verdict is against the weight of the evidence where witness testimony and observations were based primarily on speculation, surmise and conjecture.

9. The evidence is insufficient to sustain the verdict where alleged eyewitnesses gave unreliable testimony, and testified to lack of memory, lack of familiarity, and were incapable of making identifications at the time of their interviews, in subsequent police identifications or at trial.

10. The verdict is against the weight of the evidence where the description of the second assailant is inconsistent with defendant's appearance, and the maker of said statement was incapable of identifying defendant during his statement or in court.

11. The verdict is against the weight of the evidence where there was no testimony regarding any motive, intent, or physical presence on the scene for defendant's involvement in these crimes.

12. The court erroneously admitted improper testimony from Fire Marshal Bordes Ramseur. Said erroneous testimony included improper medical expert testimony, and speculative testimony regarding injuries sustained by anyone in the vicinity of the explosion, and the presence of blood in or around the crime scene.

13. The court erred when it allowed testimony regarding Christopher Cottle and Defendant's prior act when apprehended by police after smoking a "blunt," and in showing the jury defendant's arrest photograph. Said evidence was cumulative and unduly prejudicial and could not properly by [sic] be cured by a limiting instruction.

14. The evidence is insufficient to sustain the convictions where there was no testimony regarding the reckless endangerment of other people, no testimony on any participant's knowledge of whether anyone was at home at the time of the explosion, or any connection to defendant's involvement in the same.

## IV. DISCUSSION

Defendant raises fourteen alleged errors in his statement of matters complained of on appeal. The individual errors however address four overall claims—motion for directed verdict, sufficiency of the evidence, weight of the evidence and admission of testimony—and will be addressed accordingly.

9

*Commonwealth v. Rick Hughes*

## A. Motion for a Directed Verdict

Defendant first claims that "[t]he court erred when it denied [his] Motion for Directed Verdict."[8] Statement of Errors ¶ 1. In reviewing the trial court's denial of defendant's motion for judgment of acquittal, the Superior Court "must consider whether the evidence was sufficient to uphold the verdict of the trial court." *Commonwealth v. McFadden*, 850 A.2d 1290, 1292-93 (Pa. Super. 2004). "A defendant may challenge the sufficiency of the evidence to sustain a conviction [through] a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief." PA. R.CRIM. PROC. 606. "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa. Super. 2014), *appeal denied*, 95 A.3d 276 (Pa. 2014).

Defendant's sole argument in support of a motion for judgment of acquittal was that the Commonwealth failed to produce any *direct evidence*, particularly any eyewitness testimony that defendant committed arson or conspired to commit arson. *N.T.* 10/24/2013 at 58-61 (emphasis added). It is however well established that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of *wholly circumstantial evidence.*" *Commonwealth v. Hunter*, 768 A.2d 1136, 1141-42 (Pa. Super. 2001) (emphasis added). Thus, it was for the jury to decide from the evidence presented during trial, whether the Commonwealth's evidence[9] proved its case beyond a reasonable doubt. *N.T.* 10/24/2013 at 65. As neither direct nor eyewitness testimony is required to meet the Commonwealth's burden of proof, this court properly denied defendant's motion for judgment of acquittal.

---

[8] Defendant's "inadvertent use of the phrase "Directed Verdict" when "motion for judgment of acquittal" is now appropriate will not affect an otherwise valid sufficiency challenge. PA. R.CRIM. PROC. 606.

10

*Commonwealth v. Rick Hughes*

## B. Sufficiency of the Evidence

As stated above, defendant has raised several sufficiency of the evidence claims. For the following reasons, each claim lacks merit.

"In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences there from, could enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt." *Commonwealth v. Walsh*, 36 A.3d 613, 618 (Pa. Super. 2012) (citations omitted). "In assessing the sufficiency of evidence, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), *appeal denied*, 806 A.2d 858 (Pa. 2002). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995), *appeal denied*, 681 A.2d 176 (Pa. 1996) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Muniz*, 5 A. 3d 345, 348 (Pa. Super. 2010), *appeal denied*, 19 A.3d 1050 (Pa. 2011) (citation omitted). Finally, "[i]f the record contains support for the verdict, it may not be disturbed." *Commonwealth v. Adams*, 882 A.2d 496, 499 (Pa. Super 2005) (citation omitted).

---

[9] *See infra* Parts B-C.

*Commonwealth v. Rick Hughes*

11

*First*, defendant challenges his convictions for arson and conspiracy to commit arson. Specifically, defendant claims that "[t]he evidence [was] insufficient to sustain the verdicts for arson and conspiracy to commit arson, where there was no evidence of testimony presented regarding a conspiratorial relationship between defendant and either of the codefendants." Statement of Errors ¶ 2. This claim is without merit.

To sustain a conviction for arson, a felony of the first degree, the Commonwealth must establish that defendant "intentionally starts a fire or causes an explosion, *or* aids [or] counsels . . . another to cause a fire or explosion, whether on his own property or on that of another . . . thereby recklessly plac[ing] another person in danger of death or bodily injury. . ." 18 PA. CONS. STAT. ANN. § 3301(a)(1)(i). Therefore, "a conviction for arson requires the establishment of three elements: (1) that there was a fire; (2) that it was of incendiary origin; and (3) that defendant was the guilty party." *Commonwealth v. Galloway*, 448 A.2d 568, 571 (Pa. Super. 1982). "Arson may be proved [purely] by circumstantial evidence. . . [where] the circumstances proved reasonably and naturally justify an inference of the guilt of the accused, and [the] volume and quality overcome the presumption of innocence and satisfy the jury of the [defendant's] guilt beyond a reasonable doubt." *Commonwealth v. Wisneski*, 257 A.2d 624, 626 (Pa. Super. 1969) (citations omitted). Circumstantial evidence, even if not overwhelming, is sufficient to establish proof of guilt beyond a reasonable doubt. *Commonwealth v. DiNicola*, 503 Pa. 90, 96 (1983) (quoting *Commonwealth v. Nasuti*, 385 Pa. 436, 444, 123 A.2d 435, 438 (1956)).

Here, there was sufficient evidence to support the jury's guilty verdict beyond a reasonable doubt. First, there is no question as to whether there was a fire, given the explosion coupled with decedent's charred body and the burnt debris found on the sidewalk and in the interior of the property. Second, Fire Marshal Ramseur testified as an expert that the fire was incendiary in origin

12

*Commonwealth v. Rick Hughes*

and resulted from application of an open flame to an ignitable liquid. The investigation revealed that human ignition of the accelerant was delayed long enough to allow ignitable vapors to accumulate and result in a violent explosion and fire. Third, the fact that defendant was on the crime scene before and immediately after the fire and received second-degree burns on the same day of the arson, as observed by Ms. Cottle and corroborated by the Mercy Fitzgerald Hospital medical report, conclusively established that Rick Hughes was the guilty party. Indeed, defendant exited the crime scene in the company of one of Mr. Brigman's killers. Finally, despite the discrepancies regarding the location and extent of the burns sustained by defendant, the volume and quality of the evidence proved defendant's guilt beyond a reasonable doubt.

Next, defendant challenges the sufficiency of the evidence to sustain his conviction for conspiracy to commit arson. He contends that "[t]here was no evidence presented to support an agreement, nor overt actions in furtherance of the conspiracy, nor presence or participation at or around the scene." Statement of Errors ¶ 2. This claim is also without merit. To sustain a conviction for criminal conspiracy, the Commonwealth must prove beyond a reasonable doubt that defendant (1) entered into an agreement with another person or persons to commit or aid in a criminal act (2) with a shared criminal intent and that (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Johnson*, 920 A.2d 873, 878 (Pa. Super. Ct. 2007), *rev'd*, 611 Pa. 381 (2011) (citations omitted). It is well settled that "[a]n agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011) (emphasis added).

Prior to the morning of the fire, defendant had visited and slept over at the Cottle residence many times, undoubtedly establishing a relationship with the brothers of his child's mother,

*Commonwealth v. Rick Hughes*

13

Lasheena Cottle. The relationship between defendant and Christopher Cottle was further evidenced when Officer Hulmes observed them in a park, conversing while cordially sharing a lit cigar, prior to walking to the Cottle residence together. Moreover, Ms. Cottle specifically testified that defendant had slept over at the Cottle residence the night before the arson, and was seen there minutes before the explosion, however, neither he nor the brothers were inside the Cottle residence at the time of the explosion.

Indeed, defendant was seen running away from the arson scene with one of decedent's killers immediately after the explosion and fire. And, as mentioned above, he was treated the next day for second-degree burns. Finally, it is without question that the clearest *overt action of a conspiracy* to commit a crime is the actual commission of the crime itself. Here, the jury properly found that the evidence presented at trial was more than sufficient to prove the formation of a criminal agreement, a shared criminal intent and an overt act.

Defendant's *second* sufficiency claim is that "[t]he evidence is insufficient to sustain the verdict where there is no evidence to connect defendant with the crime scene or the crime [because] [t]he evidence presented at trial consisted solely of Lasheena Cottle's testimony that she saw burns on Defendant." Statement of Errors ¶ 4. Defendant further alleges that "said burns were not corroborated by any medical records and said statements were repudiated at trial." Defendant's claim lacks merit and must fail. Ms. Cottle's testimony establishing defendant's presence on the 2400 block of North Patton Street the morning of the explosion, coupled with Mr. Smith's testimony that he observed defendant running from decedent's home immediately after the explosion, clearly connect defendant to the crime scene and the crime. Furthermore, it is undisputed that medical records were introduced into evidence which established that on January 14, 2007, defendant was admitted to Mercy Fitzgerald Hospital and treated for second-degree burns sustained to his right

14

*Commonwealth v. Rick Hughes*

hand, extending to his wrist and forearm area, which he reported receiving on January 13, 2007. *N.T.* 10/24/13 at 109-10. As indicated above, the volume and quality of the Commonwealth's evidence established defendant's guilt beyond a reasonable doubt.

Defendant's *third* sufficiency claim is that "[t]he evidence is insufficient to sustain the verdict where there was no testimony regarding the *actual* ignition source of the fire, including either the open flame, and/ or a definitive explanation of the ignitable fluids which actually caused the fire." Statement of Errors ¶ 6 (emphasis added). Defendant's claim must fail. As stated above, the law does not require direct evidence of a crime to reach a guilty verdict beyond a reasonable doubt. In fact, neither the arson statute nor the case law requires that the Commonwealth prove the "actual" ignition source of the fire. Fire Marshal Ramseur concluded that the fire was intentionally set when someone applied an open flame to a combustible, flammable or ignitable liquid. Fire Marshal Ramseur's testimony, based on his training and experience, as corroborated by the criminalistics report, was a more than sufficient explanation for the cause of the fire.

Defendant's fourth sufficiency claim is that "[t]he evidence is insufficient to sustain the verdict where the medical records were inconsistent with injuries attendant to an explosion[,] . . . defendant['s] injuries were inconsistent with the testimony of the Fire Marshal[], and any connections between defendant['s] injuries [and] the crime scene were speculative at best." Statement of Errors ¶ 7. This claim is meritless. Fire Marshal Ramseur unequivocally testified that the person who started the fire by applying an open flame to an ignitable source would have sustained second to third degree burns. Defendant was admitted to Mercy Fitzgerald Hospital where he was treated for second-degree burns sustained to his right hand, extending to his wrist and forearm. Based on his training and experience, after examining defendant's medical burn record, the Fire Marshal concluded to a reasonable degree of scientific and professional certainty that

15

*Commonwealth v. Rick Hughes*

defendant's injuries were consistent with injuries that a person would sustain by applying an open flame to vapors that accumulated from an ignitable source. Thus, the evidence is more than sufficient to sustain the verdict.

Defendant's *fifth sufficiency* claim is that "[t]he evidence is insufficient to sustain the verdict where alleged eyewitnesses gave unreliable testimony, and testified to lack of memory, lack of familiarity, and [were] incapable of making identifications at the time of their interviews, in subsequent police identifications or at trial." Statement of Errors ¶ 9. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." PA. R.EVID. 602. "Personal or firsthand knowledge is a universal requirement of the law of evidence." PA. R.EVID. 602 cmt. Here, a neighbor, David Smith, testified that immediately after the explosion, he saw Christopher Cottle running with a limp from the property along with another male unequivocally identified as "Lasheena Cottle's boyfriend." *N.T.* 10/22/13 at 140-141. Mr. Smith's in court testimony was consistent with his written statement given to police on February 28, 2007, the month following the arson. In spite of an injury sustained in 2010, which affected Mr. Smith's memory, the jury evidently credited his testimony. When viewed in the light of Commonwealth's other evidence, the jury properly found Mr. Smith's testimony sufficient to establish proof of defendant's identity. Indeed, it was for the jury to determine credibility and resolve issues of fact.

Finally, defendant's *sixth* sufficiency claim is that "[t]he evidence is insufficient to sustain the convictions where there was no testimony regarding the reckless endangerment of other people, no testimony on any participant's knowledge of whether anyone was at home at the time of the explosion, or any connection to defendant's involvement in the same. Statement of Errors ¶ 14. "A person commits a misdemeanor of the second-degree if he recklessly engages in conduct which

16

*Commonwealth v. Rick Hughes*

places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. Ann. § 2705. A crime is done recklessly when there "is a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Cottam*, 616 A.2d 988, 1004 (1992). It appears defendant is arguing that there was insufficient evidence that he was aware that setting ablaze a row house on a residential block would endanger other people. This claim is perplexing and meritless. It is without question that before setting the fire, defendant was aware and consciously disregarded the known risk of death and great bodily harm he created for the residents of the 2400 block of North Patton Street when he ignited the fire in an attempt to cover up the murder of Joseph Brigman.

For the reasons stated above, it is clear that the evidence was sufficient for the jury to find defendant guilty of arson, recklessly endangering another person, and conspiracy to commit arson.

### C. Weight of the Evidence

As stated above, defendant has also raised several weight of the evidence claims. For the following reasons, each claim lacks merit.

In considering a claim that the trial court erred in refusing to find a verdict against the weight of the evidence, "appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citing *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003)). It is well-established that a new trial may only be granted by the trial court where the verdict was "so contrary to the weight of the evidence as to shock one's sense of justice." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004), *appeal denied*, 878 A.2d 864 (Pa. 2005) (citation omitted). Moreover, "credibility determinations are solely within the province of the fact-finder, and an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact." *Commonwealth v. Hanible*, 836 A.2d 36,

17

*Commonwealth v. Rick Hughes*

40 (Pa. 2003).

Defendant's *first* weight claim is that "[t]he evidence is against the weight of the verdict where it is undisputed that Brandon and Christopher Cottle were convicted of these crimes, and neither person implicated defendant as an accomplice, conspirator, or other participant." Statement of Errors ¶ 3. This claim is without merit. The Superior Court has indicated that "the path of prosecution, or non-prosecution, of a defendant's alleged co-conspirator(s) is irrelevant as to the prosecution of the defendant."*Commonwealth v. Fremd*, 860 A.2d 515, 521 (Pa. Super. 2004). Thus, the conviction of two co-conspirators does not by any means negate the guilt of a third, fourth or even fifth co-conspirator. Here the jury properly weighed the evidence presented at trial, as detailed above, and found it sufficient to prove defendant's guilt beyond a reasonable doubt. In light of the foregoing, no reasonable person could conclude that said verdict was so contrary to the weight of the evidence as to shock one's sense of justice.

Defendant's *second* weight claim is that "[t]he verdict is against the weight of the evidence where there is no physical or circumstantial evidence connecting defendant to the scene." Statement of Errors ¶ 5. This claim is also without merit. As discussed above, the evidence clearly placed defendant at the crime scene at the time of the arson. Defendant was present at the Cottle residence across the street from the scene of the arson approximately fifteen (15) minutes prior to fleeing the arson scene immediately after the explosion and fire. Defendant was observed with burns on his hands, arms and face on the day of the arson, and medical records reflecting burn treatment the day following the arson were admitted into evidence. Moreover, defendant's burns were diagnosed by his treating physician as second-degree, the exact type Fire Marshal Ramseur testified would have been sustained by the arsonist. Here, defendant has simply misstated the evidence in an attempt to raise a nonexistent weight claim.

18

*Commonwealth v. Rick Hughes*

Defendant's *third* weight claim is that "[t]he verdict is against the weight of the evidence where witness testimony and observations were based primarily on speculation, surmise and conjecture." Statement of Errors ¶ 8. This claim is also without merit. Indeed, it is a "fundamental principle that a verdict of guilt may not be based upon surmise or conjecture." *Commonwealth v. Farquharson*, 467 Pa. 50, 60 (1976) (citations omitted). In fact "where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." *Id.* Therefore, only where "[t]he record clearly established that the testimony of that witness was so contradictory as to render it incapable of reasonable reconciliation" must a verdict of guilty fail. *Id.* It must however be noted that "while a conviction cannot be supported by mere suspicion and conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Badman*, 580 A.2d 1367, 1371 (Pa. Super. 1990). Here, for the reasons stated above, the evidence presented through witness testimony fully supported the verdict of guilt. The lay witnesses testimony consisted of facts drawn from their own personal observations and firsthand knowledge. In like manner, each expert witness testified to a reasonable degree of scientific or medical or professional certainty and based their opinions on evidence of the type experts may rely.

Defendant's *fourth* weight claim is that "[t]he verdict is against the weight of the evidence where the description of the second assailant is inconsistent with defendant's appearance, and the maker of said statement was incapable of identifying defendant during his statement or in court." Statement of Errors ¶ 10. Assuming defendant is referring to the testimony and prior statement of David Smith, this claim must also fail. As indicated above it is clear that the evidence supports the jury's conclusion that defendant was the second man running from the scene of the crime and a co-conspirator to the arson and related offenses. Defendant was observed by the witness to be a frequent

19

*Commonwealth v. Rick Hughes*

visitor of Lasheena Cottle, his girlfriend, on multiple occasions before the fire. A few weeks after Mr. Smith saw defendant and Mr. Cottle leaving decedent's house immediately after the explosion, he provided a description to detectives in a written statement[10] and unequivocally identified this "second person" as Ms. Cottle's boyfriend. Any variations in the description of defendant and his appearance were an issue for resolution by the jury.

Defendant's *fifth* weight claim is that "[t]he verdict is against the weight of the evidence where there was no testimony regarding any motive, intent, or physical presence on the scene for defendant's involvement in these crimes." Statement of Errors ¶ 11. This claim is also without merit. It is well settled that in criminal proceedings, there is no requirement that the Commonwealth prove motive. *Commonwealth v. Nasuti*, 119 A.2d 642, 644 (Pa. Super. 1956), *aff'd*, 385 Pa. 436 (1956) (citations omitted). Further, when determining whether evidence of intent was "so contrary to the weight of the evidence as to shock one's sense of justice," *Rossetti*, 863 A.2d at 1191, it is without question that "the trier of fact [is] free to believe all, part, or none of the evidence [presented at trial]." *Commonwealth v. Smith*, 398 A.2d 948 (1979). "It is [also] well settled that this necessary criminal intent may be inferred from facts and circumstances which are of such a nature as to prove a defendant's guilt beyond a reasonable doubt." *Commonwealth v. White*, 335 A.2d 436, 440 (Pa. Super. 1975). Drawing the logical inferences from the testimony of Ms. Cottle, who observed defendant's medically diagnosed second-degree burns, the exact type Fire Marshal Ramseur described the arsonist would sustain, the jury properly concluded that defendant possessed the requisite intent to "start a fire or cause an explosion" as required under Pennsylvania law.

It was for the jury to resolve any doubts regarding defendant's guilt, thus their conclusion that he was guilty beyond a reasonable doubt must stand. Viewed in the light most favorable to the

---

[10] Mr. Smith perceived "Lasheena Cottle's boyfriend" as "Jamaican, I think, and . . .about 5'7, skinny build, hair twisted

20

*Commonwealth v. Rick Hughes*

Commonwealth as the verdict winner, the record does not contain weak or inconclusive evidence but it supports the jury's guilty verdicts in this case.

### D. Admission of Testimony

Finally, defendant raises two evidentiary claims. For the following reasons, both claim lacks merit.

On a challenge to a trial court's evidentiary ruling, [the Superior Court's] standard of review is one of deference." *Commonwealth v. Herb*, 852 A.2d 356, 363 (Pa. Super. 2004). "The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court." *Hawkey v. Peirsel*, 869 A.2d 983, 989 (Pa. Super. 2005). "Thus the Superior Court's standard of review is very narrow; reversal may only occur upon a showing that the trial court clearly abused its discretion or committed an error of law." *Id.* "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable . . . as shown by the evidence of record. *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa. Super. 2001)."

*First*, defendant claims that "[t]he court erroneously admitted improper testimony from Fire Marshal Bordes Ramseur [because] [s]aid erroneous testimony included improper medical expert testimony, and speculative testimony regarding injuries sustained by anyone in the vicinity of the explosion, and the presence of blood in or around the crime scene." Statement of Errors ¶ 12. This claim is also meritless. "Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court." *Wexler v. Hecht*, 847 A.2d 95, 98 (Pa. Super. 2004), *aff'd*, 593 Pa. 118 (2007). "Expert testimony must be based on more than mere personal belief. . . [it] must be supported by reference to facts, testimony or empirical data." *Snizavich v.*

---

up in little dreads." *N.T.* 10/22/2013 *at 158.*

*Commonwealth v. Rick Hughes*

*Rohm & Haas Co.*, 83 A.3d 191, 195 (Pa. Super. 2013), *reargument denied* (Feb. 3, 2014), *appeal denied*, 96 A.3d 1029 (2014). Fire Marshal Ramseur did not claim to offer opinion testimony as a medical expert, he testified to a reasonable degree of scientific and professional certainty, based on his training and experience as an expert in the field of the cause and origin of fires. After reviewing defendant's medical record, he offered more than mere personal belief and as supported by the facts, opined that defendant's injuries were consistent with injuries that a person would sustain by applying an open flame to a specific area where vapors accumulated from an ignitable source. This court properly admitted the expert testimony of Fire Marshal Ramseur, and did not abuse its discretion in doing so.

*Second*, defendant claims that "[t]he court erred when it allowed testimony regarding Christopher Cottle and [d]efendant's prior act when apprehended by police after smoking a "blunt," and in showing the jury defendant's arrest photograph. Said evidence was cumulative and unduly prejudicial and could not properly by [sic] be cured by limiting instruction." Statement of Errors ¶ 13. This claim is unsound.

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character...This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

PA. R.EVID. 404. Here, defendant's contention is disingenuous. Officer Hulmes testimony gave no indication to the jury that defendant was apprehended after the officer observed him and Mr. Cottle smoking the lit cigar. This testimony was admitted in order to show the cordial relationship between defendant and Mr. Brigman's killer. Additionally, a photograph of defendant shown to the officer for identification purposes was briefly displayed to the jury. *N.T.* 10/23/14 at 156. This court

22

*Commonwealth v. Rick Hughes*

properly determined that the probative value of Officer Hulmes's testimony and the display of defendant's photograph outweighed any potential for unfair prejudice. *N.T.* 10/23/14 at 134-142; 156. Therefore, the photograph was properly displayed and the testimony was properly admitted, not as character evidence, but for the sole purpose of identifying defendant and proving the existence of a cordial relationship between him and one of decedent's killers, Christopher Cottle.

As is the case here, absent overriding or misapplication of the law or the exercise of a judgment that is manifestly unreasonable, this court's evidentiary rulings must stand.

## V. CONCLUSION

For the aforementioned reasons, this court's judgment of sentence should be AFFIRMED.

BY THE COURT

December 3, 2014

SANDY L.V. BYRD, J.

23

*Commonwealth v. Rick Hughes*