J-S94022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHRISTOPHER MICHAEL THOMPSON | |
| Appellant | No. 681 MDA 2016 |

Appeal from the Judgment of Sentence March 9, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002384-2015

BEFORE: LAZARUS, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED MARCH 10, 2017**

Appellant, Christopher Michael Thompson, appeals from the judgment of sentence entered on March 9, 2016, following a jury trial resulting in his conviction for possession with intent to deliver a controlled substance, paraphernalia, simple possession, and criminal use of a communication facility.[1]  We affirm.

On March 28, 2015, Sergeant Milo Hooper and Officer Nicholas Ishman of the City of Harrisburg Police Department were conducting a routine morning patrol in a high crime area.  **See** Notes of Testimony (N. T.), 9/1/15, at 4-5, 11.  Sergeant Hooper saw Appellant standing on the corner.  **Id.** at 5.  When Appellant saw Sergeant Hooper, he turned and began

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(32), (a)(16), 18 Pa.C.S. § 7512, respectively.

[*] Former Justice specially assigned to the Superior Court.

walking quickly east. *Id.* The officers circled the block, and Officer Ishman got out of the car and proceeded on foot. *Id.* at 7.

Sergeant Hooper continued to drive and observed Appellant walking with another individual towards a car.[2] *Id.* at 8-9. Both men began to get into the car but immediately stepped back upon seeing Sergeant Hooper. *Id.* at 9. Sergeant Hooper asked Appellant if he could speak with him. *Id.* at 9-10. Appellant appeared nervous and walked, then ran, away. *Id.* at 9-10, 19. Sergeant Hooper spoke, instead, to Mr. Johnson, who admitted he was there to meet with Appellant and purchase heroin. *Id.* at 11.

Officer Ishman also attempted to stop Appellant, but he continued to run. *Id.* at 23-24. Additional officers responded to the area and, with Officer Ishman, they stopped Appellant outside of 2604 North Sixth Street. *Id.* at 25-26. Appellant gave incorrect information three times prior to giving his correct name and birthday. *Id.* The officers ran Appellant's information and found an active arrest warrant. *Id.* at 26-27. Officers then placed Appellant under arrest and searched him incident to arrest. *Id.* The search revealed that Appellant possessed a bundle of heroin and a cell phone.[3] *Id.* at 27.

_____

[2] Appellant's companion was later identified as Jack Johnson. At trial, Mr. Johnson testified on behalf of the Commonwealth. *See infra*.
[3] A "bundle" is approximately ten bags of heroin. *Id.* at 27.

Prior to trial, Appellant moved to suppress the narcotics seized from him, arguing that officers lacked reasonable suspicion or probable cause to detain him. *See* Motion to Suppress, 7/24/15, at 1-4. Following a hearing in September 2015, the suppression court issued a memorandum opinion denying Appellant's motion to suppress. *See* Suppression Court Opinion (SCO), 10/27/15, at 5-6. Specifically, the court found that based on the totality of the circumstances, officers possessed reasonable suspicion to stop Appellant due to his nervousness and flight in a high-crime area. *Id.* Accordingly, the court concluded, the officers properly conducted an investigatory detention of Appellant and the subsequent search and seizure was constitutional. *Id.*

In January 2016, the matter proceeded to trial by jury. Jack Johnson testified that, at some time prior to March 2015, he met Appellant in a convenience store and they exchanged phone numbers. *See* N. T., 1/12/16, at 17-18. Mr. Johnson saved Appellant's number in his phone under the initial "C." *Id.* Approximately one week later, Mr. Johnson contacted Appellant and purchased heroin from him. *Id.* at 19, 21. On March 28, 2015, Appellant sent Mr. Johnson a text message asking if he was "looking for anything." *Id.* at 21-22. Mr. Johnson replied to the text message that he needed five bags of heroin, and the two made arrangements to meet. *Id.* at 27-30. At this meeting, as Mr. Johnson and Appellant spoke, a police car pulled up near them. *Id.* at 29-30.

Sergeant Hooper and Officer Ishman testified to the same facts elicited at the suppression hearing. *Id.* at 46-65, 75-83. After taking Appellant into custody, the officers had Mr. Johnson call the number for "C" from his cell phone, and Appellant's cell phone rang. *Id.* at 84.

The Commonwealth also introduced Detective John Goshert as an expert witness. *Id.* at 110. Detective Goshert testified that Appellant possessed the heroin with the intent to deliver, due to 1) the location of the incident; 2) the interactions between the two men; 3) Mr. Johnson's statements; and 4) the text messages exchanged between Appellant and Mr. Johnson.. *Id.* at 118-120.

Following trial, the jury convicted Appellant of all charges set forth above.[4] Appellant was sentenced on March 9, 2016, to an aggregate of one and one-half to three years of incarceration followed by two years of state probation. He filed a post sentence motion which the trial court denied.

Appellant timely appealed and filed a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The suppression court and trial court issued responsive opinions.

On appeal, Appellant raises the following issues for our review:

I. Whether the trial court erred in denying Appellant's motion to suppress evidence where the police officer illegally detained,

---

[4] The jury acquitted Appellant of resisting arrest, 18 Pa.C.S. § 5104. Another charge, flight to avoid apprehension, 18 Pa.C.S. § 5126, was withdrawn.

searched, and seized Appellant in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

II. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction where the Commonwealth did not prove that Appellant possessed the drugs with the intent to deliver or use a cell phone to conduct said delivery?

III. Whether the trial court erred in denying Appellant's post sentence motion where the verdict was against the weight of the evidence so as to shock one's sense of justice where the Commonwealth never showed, *inter alia*, that [Appellant] actually possessed the drugs with the intent to deliver, or used a cell phone to conduct said deliver?

Appellant's Brief at 7 (unnecessary capitalization and responses omitted).

Appellant first claims that the suppression court erred in denying his motion to suppress evidence. *See* Appellant's Brief at 20. Appellant contends that the first contact between Appellant and the officers was a mere encounter with no attendant duty to stop and that, accordingly, the subsequent chase and arrest were illegal. *Id.* at 22. In the alternative, Appellant argues there was no reasonable suspicion to stop him, because his flight was not unprovoked. *Id.* at 25-26.

Our standard of review for an appeal denying a motion to suppress is well settled.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record

- 5 -

as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).

Appellant's claims turn on the nature of the encounter between Appellant and the police.

There are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official compulsion to stop or respond. An "investigative detention" must be supported by reasonable suspicion and subjects the suspect to a stop and a period of detention, but it does not have the coercive conditions that would constitute an arrest. The courts determine whether reasonable suspicion exists by examining the totality of the circumstances. An arrest, or "custodial detention," must be supported by probable cause.

*In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. 2016).

It is undisputed that the initial contact between Appellant and the police was a mere encounter. *See Commonwealth v. Lyles*, 97 A.3d 298, 303 (Pa. 2014) (noting that a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification). However, after police approached Appellant, he fled without justification. It is well-settled that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify an investigatory stop.

*See In the Interest of D.M.,* 781 A.2d 1161, 1163–64 (Pa. 2001); *see also Commonwealth v. Washington*, 51 A.3d 895, 898 (Pa. Super. 2012) ("nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence"); *Commonwealth v. McCoy*, --- A.3d ---, at *4, 2017 Pa. Super. 20 (filed 1/27/17) (noting that Appellant's evasive and suspicious behavior in a high crime area, his unprovoked flight, and officers' training and experience, provided requisite reasonable suspicion).

Here, the suppression court correctly concluded that the totality of the circumstances established that police had the requisite reasonable suspicion to pursue Appellant, where: he fled unprovoked from police; police again encountered Appellant walking with another individual towards a car; Appellant did not get into the car when he saw police; Appellant was nervous, evasive, and standoffish; and Appellant again ran away. Accordingly, the trial court did not err in concluding that police possessed reasonable suspicion to stop Appellant.[5]  *See McCoy*, --- A.3d --- at *4.

Next, Appellant claims that the evidence was not sufficient to sustain his convictions for possession with intent to deliver and criminal use of a communication facility, where the Commonwealth did not prove that

---

[5] The stop led to the police being able to identify Appellant, which in turn revealed an active warrant for his arrest. Appellant was not searched until he had been placed under arrest.

Appellant possessed the drugs with intent to deliver or use a cell phone to conduct their delivery. *See* Appellant's Brief at 32.

> We note that in evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. We may not weigh the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

*Commonwealth v. Little*, 879 A.2d 293, 296–97 (Pa. Super. 2005) (internal citations omitted).

First, we consider whether the Commonwealth presented sufficient evidence to sustain Appellant's conviction for possession with intent to deliver. Section 780-113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act prohibits the following acts:

> [T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). The Commonwealth establishes the offense of possession with intent to deliver when it proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it. *See Little*, 879 A.2d at 297.

Appellant acknowledges that he possessed the drugs. ***See*** Appellant's Brief at 33. However, Appellant challenges the credibility and reliability of Detective Goshert's testimony, arguing that it did not establish that Appellant possessed the heroin with the requisite intent to deliver. ***Id.*** at 34. This is essentially a challenge to the weight rather than the sufficiency of the evidence. ***See***, ***e.g.***, ***Commonwealth v. Wilson***, 825 A.2d 710, 713-14 (Pa. Super. 2003) (a review of the sufficiency of the evidence does not include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence). In such cases,

> "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review."

***Commonwealth v. Trippett***, 932 A.2d 188, 198 (Pa. Super. 2007) (quoting ***Commonwealth v. Rossetti***, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted)); ***see also Commonwealth v. Hankerson***, 118 A.3d 415, 420 (Pa. Super. 2015) (noting that this Court may not re-assess the credibility of a witness' testimony when ruling on a weight of the evidence claim).

In the instant case, Detective Goshert's testimony and opinion were based on facts in the record, his extensive experience and training in illegal narcotics trafficking, and his personal participation in drug investigations and arrests. ***See*** N. T., 1/12/16, at 118-121. It was the jury's role to evaluate

this testimony and give it such weight as they saw fit, and we decline to reassess that determination. Further, as the trial court correctly noted, the jury also was free to credit Mr. Johnson's testimony that he had set up the encounter in order to buy heroin from Appellant. **See** TCO at 5. Accordingly, we decline to reassess this credibility determination on appeal. **See Hankerson**, 118 A.3d at 420.

Appellant also challenges the sufficiency of the evidence to sustain his conviction for criminal use of a communication facility. **See** Appellant's Brief at 35. Specifically, he argues that the text messages introduced as evidence were not properly authenticated. **Id.** at 36-37.

The offense of criminal use of a communication facility is defined in relevant part as follows:

> **(a) Offense defined.--**A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.
>
> …
>
> **(c) Definition.--**As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S. § 7512.

The Commonwealth presented the following evidence: Mr. Johnson had saved Appellant's number in his phone as "C." Officer Ishman testified that when he called "C" from Mr. Johnson's cell phone, Appellant's phone rang. Mr. Johnson testified that he had texted Appellant to set up a drug transaction. Viewed in the light most favorable to the Commmonwealth, its evidence was sufficient to establish that Appellant had used a cell phone to arrange a drug transaction. *Little*, 879 A.2d at 296–97.

Finally, Appellant claims that the trial court erred in denying his post sentence motion asserting the verdicts were against the weight of the evidence. *See* Appellant's Brief at 37. Appellant contends that the verdicts were so against that weight as to shock one's sense of justice, because the Commonwealth never showed that Appellant actually possessed the drugs with the intent to deliver or used a cell phone to arrange the sale. *Id.*

The law regarding weight of the evidence claims is well-settled.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

Appellant claims that Mr. Johnson's testimony was contradictory to the evidence in the case, unreliable due to his prior *crimen falsi* and pending criminal charges, and inconsistent with the remainder of the evidence introduced at trial. ***See*** Appellant's Brief at 38-39. However, the jury heard all of the evidence and was free to believe or disbelieve Mr. Johnson's testimony as they saw fit. ***See Hankerson***, 118 A.3d at 420. Mr. Johnson was clear that he text-messaged Appellant to buy heroin. Further, he testified that he met with Appellant in order to buy heroin. His testimony was supported by expert testimony. Accordingly, we decline to find that the trial court abused its discretion. ***Id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2017